[Crim. No. 2864. In Bank.—July 1, 1926.]

## THE PEOPLE, Respondent, v. GRACE BERNICE DAY, Appellant.

[1] CRIMINAL LAW — THROWING OF ACID — INDICTMENT FOR TWO OFFENSES—ACQUITTAL ON ONE COUNT.—Where an indictment arising out of a nitric acid throwing incident is in two counts, one charging an assault with a caustic chemical in violation of section 244 of the Penal Code and the other charging an assault with a means or force likely to produce great bodily injury in violation of section 245 of said code, the acquittal of the defendant of the offense charged in the second count will not operate as an acquittal of the defendant of the offense charged in the first count.

[2] ID—DIFFERENT OFFENSES—ESSENTIAL ELEMENTS—PLEADING—ACQUITTAL.—If the statute describing one offense prescribes as an essential element the statement of a fact not prescribed by the statute describing the other offense, and if in the statement of the transaction in two different counts that fact is included in the statement of the transaction based upon the statute requiring it and omitted in the statement of the transaction based upon the statute not requiring it, the verdict of acquittal upon one of the counts is not necessarily an acquittal upon the other, as in such a situation the jury may well find that the fact required as an essential element of one of the offenses is not true and therefore be required to render a verdict of acquittal upon that count, but, since that fact is not an essential element to constitute the other offense, be justified in rendering a verdict of guilty as to that count.

[3] ID. — PLEADING — PREAMBLE — SURPLUSAGE.—Where an indictment arising out of a nitric acid throwing incident is in two counts, one charging an assault with a caustic chemical in violation of section 244 of the Penal Code and the other charging an assault with a means or force likely to produce great bodily injury in violation of section 245 of said code, and the preamble to the second count states that this count is a statement of the same *offense* as that set out in count one, it is apparent that what is meant is that the second count is a statement of the same *transaction*, and such statement may be disregarded as mere surplusage.

[4] ID.—ASSAULT WITH CAUSTIC CHEMICAL—ASSAULT WITH MEANS LIKELY TO PRODUCE BODILY HARM—DISTINGUISHING ELEMENTS.—The elements requisite for a conviction under section 244 of the Penal Code are not identical with the elements required under section

2. Single act constituting two independent offenses, note, 58 Am. Dec. 540. See, also, 7 Cal. Jur. 956; 8 R. C. L. 148.

245 of said code, as, for example, section 244 requires proof of the fact that the acid actually touched the person of another, whereas no proof is required by section 245 that the means or force likely to produce great bodily injury was actually exerted against the person of another; and, under section 244 the defendant cannot be found guilty of the offense charged if the attempt to throw or place acid upon the person of another failed of fruition, while under section 245 the defendant would be guilty although the assault was not actually consummated, provided the means or force used was likely to produce great bodily injury.

[5] ID.—THROWING OF ACIDS—PRODUCING BODILY HARM—INTENT.— While it may sometimes happen that the throwing of the acids described by section 244 of the Penal Code would have the result of producing great bodily injury, the fact that it does so, or even that it will have the properties of doing so, is not required by said section, but the crime is complete if any quantity of acid so described, however small, or weak, or incapable of producing great bodily harm, is thrown or placed upon the person of another, if done wilfully and maliciously with the intent to injure the flesh or to disfigure to the slightest extent the body of another.

[6] ID.—ASSAULT WITH MEANS OR FORCE LIKELY TO PRODUCE BODILY HARM—PLEADING.—In this prosecution under an indictment in two counts, the first charging an assault with a caustic chemical in violation of section 244 of the Penal Code and the second charging an assault with a means or force likely to produce great bodily injury in violation of section 245 of the said code, in the second count in order to aver that the means and force was likely to produce great bodily harm it was necessary not only to allege that the means and force was likely to produce great bodily harm but it was necessary to aver additional fact to substantiate this conclusion, and the pleader did this by averring that as a result of the means and force used the complaining witness did suffer great bodily harm.

[7] ID.—ABILITY TO COMMIT CRIME—MENTAL AND MORAL AGE OF DEFENDANT.—In this prosecution under an indictment arising out of an acid throwing incident, the trial court did not err in denying defendant's motion for a new trial based upon affidavits filed after the trial of the case to the effect generally that the mental and moral age of the defendant was that of a child under the age of fourteen years, as subdivision 1 of section 26 of the Penal Code

5. See 3 Cal. Jur. 207.

7. Criminal responsibility of infants, note, 26 **Am. Rep.** 100. See, also, 14 Cal. Jur. 135; 14 R. C. L. 264.

refers to the physical age of a *child* and has no reference to the mental or moral age of an *adult.*

[8] Id.—Testimony Before Grand Jury—Death of Witness—Cumulative Evidence.—In such prosecution, the error, if any, in permitting in evidence the testimony of a witness (who had died previous to the trial) taken before the grand jury, was not sufficient to warrant a reversal, where his testimony referred solely to the picking up of the bottle and cork and was merely cumulative of evidence of other witnesses, and the defense was predicated solely upon the contention that the acid was accidentally splashed upon her husband and not upon a denial that she had a bottle of nitric acid with her at the time and place charged.

[9] Id.—Accidental Acts—Attempt to Commit Suicide—Issues—Instructions.—In such prosecution, the real issue before the lower court having been whether the alleged acts as outlined in the indictment were accidentally done, and not whether they were done in an attempt to commit suicide, and the court having instructed the jury that the defendant claimed that the acid was accidentally spilled and that she had no intention of using it upon the person of her husband, and if they found from the evidence that this was true they must acquit the defendant, or if after due consideration of all the testimony they were not convinced of the guilt of the defendant beyond a reasonable doubt and to a moral certainty they must acquit her, it was not error to refuse defendant's requested instruction "that suicide or an attempt to take one's own life is not a crime in California. If you find that the defendant . . . spilled the acid accidentally while endeavoring to open the bottle for the purpose of enabling her to take the acid and destroy herself you shall acquit the defendant of the crime or offense charged in the indictment."

(1) 16 **C. J.**, p. 1106, n. 16 New.    (2) 16 **C. J.**, p. 271, n. 9, p. 1106, n. 16 New.    (3) 31 **C. J.**, p. 747, n. 24, p. 749, n. 45.    (4) 5 **C. J.**, p. 726, n. 98, p. 728, n. 43.    (5) 5 **C. J.**, p. 728, n. 43.    (6) 5 **C. J.**, p. 768, n. 26 New.    (7) 31 **C. J.**, p. 1094, n. 87.    (8) 17 **C. J.**, p. 318, n. 13.    (9) 16 **C. J.**, p. 1063, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Carlos S. Hardy, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Max Lewis and Anderson & Anderson for Appellant.

9. Attempted suicide as crime, notes, 7 **L. R. A** (**N. S.**) 286; **8** Ann. Cas. 354.  See, also, 13 **R. C. L.** 722.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy C. Becker, Deputy District Attorney, for Respondent.

LENNON, J.—The indictment contained two counts. The first count accused the defendant, Grace Bernice Day, of the crime of assault with a caustic chemical, a felony, committed as follows: " . . . on or about the 23rd day of February, 1925, at and in the . . . County of Los Angeles, State of California, the said defendants, Grace Bernice Day and Carlyn Lundstrom did wilfully, unlawfully, maliciously and feloniously place and throw upon the person of another, to-wit, one Darby Day, the younger of that name, a human being, a certain corrosive acid and caustic chemical, to-wit: nitric acid, with the felonious intent then and there and thereby to injure the flesh and disfigure the body and person of the said Darby Day."

Count two charged as follows: "For a further and separate cause of action, being a different statement of the same offense as that set forth in Count I hereof, the said Grace Bernice Day and Carlyn Lundstrom . . . did then and there wilfully, unlawfully, violently and feloniously place and throw a certain corrosive acid and caustic chemical, to-wit: nitric acid, upon the head, body and person of one Darby Day, the younger of that name, a human being, which said throwing and placing of said acid upon the person of the said Darby Day, as aforesaid, did then and there cause grievous and serious and permanent bodily injuries to the said Darby Day, and was then and there exerted against the said Darby Day by the said defendants by means likely to, and which did, produce great bodily injury to the said Darby Day."

The following verdicts were brought in by the jury: "We, the Jury in the above entitled action, find the Defendant Grace Bernice Day guilty of Assault with a Caustic Chemical, a felony as charged in Count No. 1 . . . " and "We, the Jury in the above-entitled action, find the Defendant Grace Bernice Day not guilty as charged in Count No. 2 of the Indictment." Carlyn Lundstrom was acquitted by the jury under both counts of the indictment. The defend-

ant was sentenced to San Quentin for the term prescribed by law for the crime of assault with a caustic chemical.

The appeal is from the judgment and from the order denying defendant's motion for a new trial.

The evidence is sufficient to sustain a verdict of guilty on the first count of the indictment. It was defendant's defense that she had purchased the nitric acid in question for the purpose of committing suicide; that while she and her husband were seated in an automobile in front of his home, she uncorked the bottle preparatory to taking the acid; that her husband started the car abruptly and by so doing caused the acid to be splashed both on himself and on her. It is admitted by the defendant that the bottle of nitric acid was in her hand at the time it was splashed or thrown upon her husband. The trial of the case therefore resolved itself into the question of whether the acid was accidentally splashed upon Darby Day or whether it was maliciously thrown upon him by his wife "with the intent to injure or disfigure the body and flesh" of said Darby Day. It will suffice to say that in addition to the direct testimony of Darby Day there was introduced in evidence testimony of circumstances attending and surrounding the occurrence tending to substantiate the theory of the prosecution that the acid was maliciously thrown. There is the outstanding and uncontradicted fact that after the occurrence the defendant immediately jumped into the waiting automobile driven by her sister, without stopping to see whether or not her husband had been seriously injured. This fact is scarcely compatible with the theory that the acid was accidentally thrown. There is also in evidence the fact that the defendant was familiar with the properties of veronal and the fact that if taken in large quantities this drug would cause death. It is scarcely conceivable that the defendant would have selected nitric acid as a method of committing suicide when she had at her command the means of committing suicide in a much less painful manner.

[1] The claim is made by the defendant that by the verdict of acquittal on count two, she was acquitted of the offense charged in count one. This claim is predicated upon the theory that there is such a complete identity of the offenses charged in the two counts of the indictment that an

acquittal of one offense will operate as a bar to a conviction
of the other offense.

It may be conceded that if the two counts stated precisely
the same offense that an acquittal upon one count would
operate as an acquittal upon the other count.   [2]  If, how-
ever, the statute describing one offense prescribes as an essen-
tial element the statement of a fact not prescribed by the
statute describing the other offense, and if in the statement
of the transaction in the different counts, that fact is in-
cluded in the statement of the transaction based upon the
statute requiring it, and omitted in the statement of the
transaction based upon the statute not requiring it, the verdict
of acquittal upon one of the counts is not necessarily an
acquittal upon the other.  In such a situation the jury may
well find that the fact required as an essential element of
one of the offenses is not true and therefore be required to
render a verdict of acquittal upon that count, but, since that
fact is not an essential element to constitute the other offense,
be justified in rendering a verdict of guilty as to that count.
It is not the great similarity in most of the facts constituting
separate offenses but the presence of a fact necessary in one
offense and absent in another that determines whether offenses
are separate.    (*Murphy* v. *United States,* 285 Fed. 801, 814;
*Gavieres* v. *United States,* 220 U. S. 338, 342 [55 L. Ed. 489,
31 Sup. Ct. Rep. 421, see, also, Rose's U. S. Notes] ; *Morey*
v. *Commonwealth,* 108 Mass. 433.)

This is the test used to determine the validity of a plea
of once in jeopardy interposed to a subsequent indictment
after an acquittal or conviction upon one indictment.  Of
course, no plea of twice in jeopardy or former acquittal was
or could have been made by the defendant in this action
inasmuch as she was tried but once.  It should be noted,
however, that all of the rules applicable to a plea of once
in jeopardy do not have application to a determination of
whether the offenses stated in different counts of an indict-
ment are identical.  Thus the rule, applicable to jeopardy,
that an acquittal of a higher offense necessarily involves an
acquittal of a lesser offense included therein, and that there-
after the defendant cannot be tried for another higher offense
involving therein the same lesser offense, has no application
to a situation where the two higher offenses are presented
to the jury in alternative counts.  (*People* v. *McDaniels,* 137

Cal. 192 [92 Am. St. Rep. 81, 59 L. R. A. 578, 69 Pac. 1006];
*People* v. *Defoor,* 100 Cal. 150 [34 Pac. 642].)   If an accused
is acquitted after a trial upon an indictment containing
but one count, the jury necessarily found that the elements
composing a lesser offense included within the higher offense
charged were absent, for otherwise it would have been their
duty to convict the defendant of the lesser offense.   How-
ever, if a defendant is acquitted upon one count of an in-
dictment containing alternative counts, it does not follow
that the jury found *all* of the elements essential to the offense
stated in that count absent but merely that they found absent
the element or elements distinguishing the offense stated in
that count from the offense stated in the alternative count.

Originally section 954 of the Penal Code did not permit
the inclusion in one indictment or information of two or
more different offenses even if they were connected together
in their commission and arose out of the same transaction.
In 1915 it was amended to read as follows: ''The indictment
or information may charge two or more different offenses
connected together in their commission, or different state-
ments of the same offense, or two or more different offenses
of the same class of crimes or offenses, under separate counts,
. . . ''   The evident purpose of this amendment was to
widen the latitude permitted a prosecuting attorney in set-
ting out the different offenses, which, in his opinion, the
evidence before him at the time of drawing the indictment
or information, showed had been committed.   To hold that
when two alternative counts are presented to the jury, an
acquittal of a higher offense stated in one count, necessarily
involves an acquittal of the lesser offense included therein
and is a bar to the conviction of the higher offense set out
in the alternative count, would practically nullify the bene-
ficial object of the amendment.   The true test as previously
indicated is the presence of a fact necessary in one offense
and absent in another.

An application of this test to the pleadings here involved
convinces us that the offenses are not completely identical
and that the jury may well have acquitted the defendant of
the crime charged in the second count although at the same
time finding her guilty of the crime charged in the first
count.

[3] Despite the fact that the preamble to the second count states that this count is a statement of the same *offense* as that set out in count one, it is apparent that what was meant was that the second count was a statement of the same *transaction*. The statement may therefore be disregarded as mere surplusage. (*People* v. *Evanoff,* 45 Cal. App. 108 [187 Pac. 54].)

Clearly two separate and distinct offenses described and designated by different code sections were attempted to be stated by the separate counts of the indictment. The two counts were obviously based upon separate sections of the Penal Code defining different offenses. In count one the defendant was charged with the crime of assault with a caustic chemical. In count two the crime is designated as assault by means and force likely to produce great bodily harm. Section 244 of the Penal Code, the basis of the first count, reads as follows:

"Every person who wilfully and maliciously places or throws, or causes to be placed or thrown, upon the person of another, any vitriol, corrosive acid, or caustic chemical of any nature, with the intent to injure the flesh or disfigure the body of such person, is punishable by imprisonment in the state prison not less than one nor more than fourteen years."

Section 245 of the Penal Code, the basis of the second count, reads as follows:

"Every person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable by imprisonment in the state prison, or in a county jail, not exceeding ten years, or by fine not exceeding five thousand dollars, or by both."

[4] An analysis of the two code sections used as the basis for the two counts demonstrates that the elements requisite for a conviction under section 244 of the Penal Code are not identical with the elements required under section 245. Section 244 requires proof of the fact that the acid actually touched the person of another. No proof is required by section 245 that the means or force likely to produce great bodily injury was actually exerted against the person of another. Under section 244 the defendant could not be found guilty of the specific offense if the attempt to throw

or place acid upon the person of another failed of fruition.
Under section 245 the defendant would be guilty although
the assault was not actually consummated. By section 245
proof is required that the means or force used must be likely
to produce *great* bodily injury. [5] While it may often-
times happen that the throwing of the acids described by
section 244 of the Penal Code would have the result of pro-
ducing great bodily injury, the fact that it does so, or even
that it will have the properties of doing so, is not required
by said section. The crime is complete if any quantity of
acid so described, however small in quantity or however weak
in strength and however incapable of producing great bodily
harm, is thrown or placed upon the person of another, if
done wilfully and maliciously with the intent to injure the
flesh or to disfigure to the slightest extent the body of an-
other. It is apparent, therefore, that the two crimes as
designated and described by the two sections of the Penal
Code are separate and distinct offenses although they may
well arise out of the same transaction.

[6] An examination of the statement of the offenses
charged in the two counts discloses the fact that the differen-
tiation made in the two offenses by the two code sections has
been made by the indictment in at least one respect and this
is sufficient to support the conclusion that the offenses are
not identical. The prosecutor in drafting the first count
of the indictment followed closely the language of section
244 of the Penal Code and stated the offense in almost the
identical language of the code section. In the second count,
in order to aver that the means and force was likely to pro-
duce great bodily harm it was necessary not only to allege
that the means and force was likely to produce great bodily
harm but it was necessary to aver additional facts to sub-
stantiate this conclusion. The pleader did this by averring
that as a result of the means and force used, the complain-
ing witness did suffer great bodily harm. Herein lies the
distinction between the first and second count. To find the
defendant guilty under the first count it was immaterial
whether the victim did or did not suffer great bodily harm
or whether the acid thrown had the property of causing
great bodily harm. To find the defendant guilty under the
second count it was necessary to find that the means and
force used was likely to produce great bodily harm. In other

words, if the jury believed that the acid thrown was not a means or force likely to produce great bodily harm, it was at liberty to acquit upon the second count and convict upon the first count. It is immaterial that the evidence may show that as a matter of fact the acid was means likely to produce great bodily harm and that as a matter of fact the victim did suffer great bodily harm. The determination of this fact was for the jury. (*Carrignan* v. *United States*, 290 Fed. 189, 190.)

[7] The court did not err in denying the defendant's motion for a new trial based upon affidavits filed after the trial of the case to the effect generally that the mental and moral age of the defendant was that of a child under the age of fourteen years. Section 26 of the Penal Code, subdivision 1, is not susceptible of the constrained construction contended for by the defendant. Said section reads as follows: "All persons are capable of committing crimes except those belonging to the following classes: One—Children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness. . . . " Said section clearly refers to the physical age of a *child* and has no reference to the mental or moral age of an adult.

[8] The error, if any, in the permitting in evidence the testimony of Jesse Farr, who had died previous to the trial, taken before the grand jury, is not sufficient to warrant a reversal. His testimony, incorporated in the stenographic report of the proceedings before the grand jury referred solely to the picking up of the bottle and cork and was merely cumulative of evidence of other witnesses. Furthermore, defendant's defense was predicated solely upon the position that the acid was accidentally splashed upon her husband and not upon a denial that she had a bottle of nitric acid with her at the time and place charged. It cannot be said, therefore, that she was prejudiced by the introduction of this testimony.

[9] No error was committed by the trial court in refusing the instruction requested by the defendant that "The court instructs the jury that suicide or an attempt to take one's own life is not a crime in California. If you find that the defendant Bernice Day spilled the acid accidentally while endeavoring to open the bottle for the purpose of enabling her to take

the acid and destroy herself you shall acquit the defendant of the crime or offense charged in the indictment.'' The real issue in the lower court was not whether the alleged acts as outlined in the indictment were done in an attempt to commit suicide but whether they were accidentally done. If done accidentally it was immaterial whether done pursuant to a plan to commit suicide or for any other reason. The instruction requested was, therefore, sufficiently covered by the following instruction given by the trial court: ''The defendant Grace Bernice Day claims that the acid was spilled accidentally and that she had no intention of using it upon the person of her husband, Darby Day, Jr. If you find from the evidence that this is true you must acquit the defendants, or if after due consideration of all the testimony you are not convinced of the guilt of the defendants beyond a reasonable doubt and to a moral certainty you must acquit them.'' .

The judgment is affirmed.

Richards, J., Shenk, J., and Finlayson, J., *pro tem.,* concurred.

Mr. Justice Curtis, deeming himself disqualified, did not participate in the foregoing opinion.

SEAWELL, J., Concurring.—I am in disagreement with the construction placed upon section 244, Penal Code, by the prevailing opinion, wherein it is said:

''While it may oftentimes happen that the throwing of the acids described by section 244 of the Penal Code would have the result of producing great bodily injury, the fact that it does so, or even that it will have the properties of doing so, is not required by said section. The crime is complete if any quantity of acid so described, however small in quantity or however weak in strength and however incapable of producing great bodily harm, is thrown or placed upon the person of another, if done wilfully and maliciously with the intent to injure the flesh or to disfigure to the slightest extent the body of another.''

The section thus construed reads:

''Section 244. [Assaults with caustic chemicals.] Every person who wilfully and maliciously places or throws, or causes to be placed or thrown, upon the person of another,

any vitriol, corrosive acid, or caustic chemical of any nature, with the intent to injure the flesh or disfigure the body of such person, is punishable by imprisonment in the state prison not less than one nor more than fourteen years.''

The purpose of said section is too evident to require discussion. It was clearly enacted to deter wicked and viciously disposed persons from injuring the flesh or disfiguring the body of a human being by the use of acids of any kind which contain caustic or corrosive properties sufficiently strong to accomplish the purpose of the person who throws them or causes them to be placed upon the body of another with the intent mentioned in said code section. Caustic chemicals are thus defined by Webster's New International Dictionary: "1. Capable of destroying the texture of anything or eating away its substance by chemical action; burning; corrosive.'' Vitriol and corrosive acids are known to possess properties similar to, if not identical with those of caustic chemicals. The section is aimed at such chemicals as *do harm* to the human flesh, and is not directed against an adulteration, as the opinion holds, so weakened as to be utterly harmless. Society has suffered neither danger, damage nor annoyance by the vicious throwing of harmless adulterations upon its citizens, but it has been outraged by the throwing of *vitriols, corrosive acids* and *caustic chemicals* upon its citizens. Therefore we must conclude that the legislature by the enactment of section 244 was moved by a sense of legislative accomplishment and was not wandering in a mere vacuity of purposelessness.

The crime consists in throwing upon the person of another any kind of vitriol, etc., that would ordinarily disfigure the flesh by burning by chemical action and there is nothing either in its language nor in the reason for the legislation that can justify the inference that an adulteration containing any quantity of said acids, however infinitesimal, impotent, or harmless said adulteration may be, was intended to supply the ingredients of the crime. The throwing of "any vitriol, corrosive acid," etc., means vitriol and acids which contain the essential properties that characterize them as capable of doing the damage specifically mentioned in the statute.

It is an axiom of criminal law that a naked intent is not sufficient to constitute a criminal offense, however wicked the design of the accused may be.

To constitute the crime defined by said section 244, *supra,* there must be an accompanying overt act, intent and the ability upon the part of the person accused to accomplish the act defined by statute. Had the appellant mistaken a vial of water for a vial of vitriol and thrown it upon the person intended to be injured, the crime described by said section 244 would not have been made out. Neither would it have been made out if the proof showed that a mere drop of vitriol, or any one of the other acids named in the statute, had been placed in a gallon of water and thus diluted to a degree that it was absolutely harmless to human flesh. If such had been the case the ability to commit the offense was totally lacking, notwithstanding the evil intent.

Vitriol or caustic chemicals depend for their characterization upon the strength of the chief ingredients which enable them to fulfill their offices. When they lack such strength and are reduced to a state of harmlessness they have lost their main characteristic.

The language of the opinion specifically referred to herein is not only *obiter,* in my opinion, but it is not a correct statement of the law. The latter reason has prompted my dissent from that portion of the opinion above reviewed.

I concur in the conclusion, however.

Waste, C. J., concurred.

Rehearing denied.