[Crim. No. 4401. In Bank. Apr. 28, 1942.]

THE PEOPLE, Respondent, v. HERBERT M. AMICK, Appellant.

W. C. Dorris, C. Fleharty and R. W. Henderson for Appellant.

Earl Warren, Attorney General, and R. S. McLaughlin, Deputy Attorney General, for Respondent.

THE COURT.—A petition for hearing was granted in this case after decision by the District Court of Appeal, Fourth District, affirming a judgment of conviction of the defendant on a charge of negligent homicide (§ 500, Veh. Code). After further consideration of the appellant's contentions, we have concluded that the opinion prepared by Mr. Justice Griffin of that court correctly states the law applicable to the facts and the proceedings involved. We therefore adopt that opinion as the opinion and decision of this court. Said opinion is as follows:

"Appellant was charged in an amended information as follows: Count 1, with the crime of manslaughter in that he did, on the 28th day of May, 1941, feloniously and without malice, kill Albert Briggs and Fred McKinney, human beings. In the second count he was charged with violating section 480 of the Vehicle Code (so-called 'hit and run' section); and in count 3 with violating section 500 of the Vehicle Code (negligent homicide) in that he did on May 28, 1941, feloniously drive an automobile in a negligent manner, and in a manner constituting the commission of an unlawful act not amounting to a felony, thereby injuring Albert Briggs and Fred McKinney, who died as a proximate result of the injuries.

"After a plea of not guilty as to each count appellant went to trial which resulted in a verdict of not guilty as to the

first and second counts and guilty as to the third count. A new trial was denied. Appellant was sentenced upon the third count. This appeal followed.

"A brief résumé of the facts shows that on May 28, 1941, appellant was employed by the WPA at a location known as the Blue Mountain Project, a few miles northeast of Woody in Kern County. He was a truck driver and the truck that he drove was a Dodge 1½ ton flat rack truck with a stake bed and stake sides. On the day mentioned appellant took the truck to Bakersfield at about 8:30 a. m. He had at least four bottles of beer while in Bakersfield. He returned to the project at about 3 p. m. There was evidence that he was intoxicated at that time. His driver's license and chauffeur's license had been previously revoked in December, 1940, but this was not known to the WPA officials due to Amick's misstatements to them. About 3:25 p. m. the truck was loaded with 17 workmen seated on seats in the rear of the truck when the appellant drove away from the site towards Woody. The highway is about 17 feet wide with a steep grade and has many curves about a mile and a half east of Woody. While proceeding at a rate of from 35 to 45 miles an hour the appellant came around a curve in the road, driving on the wrong side of the highway and in the path of another truck which was going in the opposite direction up the grade. As the appellant thus proceeded, he collided with the other truck and at the time of the collision the evidence convincingly shows that he was driving at an excessive rate of speed in violation of section 510 of the Vehicle Code; that he was also driving under the influence of intoxicating liquor, in violation of section 502 of the Vehicle Code; that he was driving on the wrong side of the highway on a mountain road, in violation of sections 525 and 597 of the Vehicle Code; and that he was also guilty of reckless driving in violation of section 505 of the same code. There was also evidence that the appellant was driving in a negligent manner, which negligence might have been the violation of any of the foregoing sections or may have consisted of independent acts testified to at the trial. As a result of the collision six of the men on the truck were seriously injured and two others, Albert Briggs and Fred McKinney, received injuries from which they soon died.

"The sole point raised by appellant is that the verdict acquitting him of manslaughter is inconsistent with the ver-

dict of guilty of negligent homicide, since both charges grew out of the same act which resulted in the death of the same individuals; that an acquittal upon a count in an information charging manslaughter is inconsistent with a conviction on another count charging homicide in the same information and amounts to a complete acquittal of the accused. In support of the contention appellant cites *People* v. *Andursky*, 75 Cal. App. 16 [241 Pac. 591] (1925), where it was held that where a defendant was charged in one count of an information with the crime of rape alleged to have been committed upon a female of the age of 15 years and in a second count of the same information, charging him with a violation of the Juvenile Court Act, where it was alleged, among other things, that the defendant, on the same day charged in the first count, induced her to remain away from her home and usual place of abode and induced her to go with him to a room in a rooming house and there occupied the same bed with her and there accomplished acts of sexual intercourse with her, and the same evidence was relied on to convict on both counts, a verdict finding the defendant guilty on the first count and not guilty on the second count was inconsistent and conflicting, and insufficient to support a conviction.

"*People* v. *Day*, 199 Cal. 78 [248 Pac. 250] (1926); *People* v. *Coltrin*, 5 Cal. (2d) 649, 661 [55 P. (2d) 1161]; and *People* v. *Hickman*, 31 Cal. App. (2d) 4, 11 [87 P. (2d) 80], are also cited. It is argued that in view of the above-cited authorities 'that the two essential elements of the crime of negligent homicide, namely, "in the commission of an unlawful act not amounting to a felony" or "driving a vehicle in a negligent manner" are contained in the crime of involuntary manslaughter, and that the jury by rendering a verdict of not guilty upon the manslaughter count, and rendering a verdict of guilty upon the negligent homicide count, rendered an inconsistent verdict, and the defendant is entitled to an acquittal upon both counts.'

"It should be noted that the Andursky and Day cases were decided in 1925 and 1926 respectively. In 1927, the legislature amended several sections of the Penal Code relating to pleading of various crimes (Stats. 1927, p. 1042.) There was added to the last sentence of section 954 the following: 'A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.' We might well assume that the decision in the first two above-mentioned cases

prompted or had considerable to do with the legislative determination to amend section 954 as above quoted. The remaining cases cited by appellant were however, decided subsequent to that amendment, each of which quotes from or refers to the case of *People* v. *Day, supra,* to the effect that where a person is convicted on one count of an information and acquitted on another he is entitled to an acquittal on both counts if both counts state precisely the same offense. Both of these recent cases do not discuss the 1927 amendment to section 954. The reference to the Day case in each of these later cases might be considered ''inappropriate,'' for in the Coltrin case the court held that abortion and murder were two separate and distinct crimes and that there is no common basis on which they may rest as the same offense. Similarly in the Hickman case the court held that an acquittal of grand theft as charged in count 3 and a conviction of attempt to commit grand theft as charged in count 2 were not inconsistent verdicts, as the two crimes were not identical. The rule contended for by appellant might possibly apply if he had been acquitted of count 1 and thereafter a new and different information was filed charging him with negligent homicide and he was again placed on trial.

''In *People* v. *Day, supra,* p. 83, it was said:

'' 'This is the test used to determine the validity of a plea of once in jeopardy interposed to a subsequent indictment after an acquittal or conviction upon one indictment. Of course, no plea of twice in jeopardy or former acquittal was or could have been made by the defendant in this action inasmuch as she was tried but once. It should be noted, however, that all of the rules applicable to a plea of once in jeopardy do not have application to a determination of whether the offenses stated in different counts of an indictment are identical.'

''We believe the effect of the amendment of section 954 of the Penal Code in 1927 was given careful consideration in the case of *People* v. *Ranney,* 123 Cal. App. 403 [11 P. (2d) 405], where a similar argument was presented. It was there said:

'' 'The disposition of one count had no bearing upon the verdict with respect to other counts, regardless of what the evidence may have been. Each count must stand upon its own merit. The amendment to section 954 of the Penal Code conclusively settles this controversy adversely to the con-

tention of the appellant. That section provides for the charging of "two or more different offenses of the same class of crimes or offenses, under separate counts." That section, as amended in 1927, then provides that, "A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count." This language clearly means that each count in an indictment or information, which charges a separate and distinct offense must stand upon its own merit, and that a verdict of either conviction or acquittal upon one such charge has no effect or bearing upon other separate counts which are contained therein . . . There are no authorities to the contrary in other jurisdictions where a statute exists similar to the California law above quoted.'

"The appellate department of the Superior Court in *People* v. *Horowitz*, 131 Cal. App. (Supp.) 791 [19 P. (2d) 874], had occasion to consider this same argument. At page 793 appears the following: -

" 'Appellants' most strongly urged argument is that the dismissal of the second count was an acquittal on that charge and that as an acquittal, it is so inconsistent with the finding of guilt under count 1 that the latter cannot stand . . . Authorities could be cited which would seem to support a reversal. (*People* v. *Andursky*, (1925) 75 Cal. App. 16 [241 Pac. 591] ; *People* v. *Puppilo*, (1929) 100 Cal. App. 559 [280 Pac. 545].) But we find more persuasive cases recognizing that such inconsistent verdicts may be caused not by the confusion but the mercy of the jury, of which the appellant can neither complain nor gain further advantage. (Citing cases.) Moreover, probably to avoid the result of those cases which interpret inconsistent verdicts as acts of stupidity rather than acts of leniency, section 954 of the Penal Code was amended in 1927 so that it now reads,' (as above quoted) "We conclude that even if the dismissal be regarded as an acquittal, that is no reason why the judgment of conviction, based on ample evidence, should be reversed.'

"The effect of the 1927 amendment to section 954 of the Penal Code was recognized and commented upon in the recent case of *People* v. *Derenzo*, 46 Cal. App. (2d) 411 [115 P. (2d) 858]. In that case the court held that since, under section 954 of the Penal Code, the verdict of acquittal of one or more counts of an information is not to be deemed an acquittal of any other count, a dismissal of a count of receiving stolen property, if it be regarded as tantamount to an acquit-

tal, is not a bar to conviction on counts of robbery and burglary, which are wholly separate and distinct offenses.

"It might be well to point out in passing that appellant was not charged with involuntary manslaughter, but with manslaughter, which under section 192 of the Penal Code could be either voluntary or involuntary so long as the act was committed without malice. Manslaughter, like murder, can be committed with any instrumentality or means known to the ingenuity of man, whereas, negligent homicide can only be committed as specified in section 500 of the Vehicle Code and by means of an automobile.

"Our Supreme Court in *People* v. *Beckhard,* 14 Cal. (2d) 690 [96 P. (2d) 794] (1939) (all justices concurring), has definitely held that by the enactment of section 500 of the Vehicle Code the legislature defined á crime different from any of the crimes which had been defined in any of the various provisions of the Penal Code. The purpose of the enactment of section 500 of the Vehicle Code was reviewed in *People* v. *Pociask,* 14 Cal. (2d) 679, 686, 687 [96 P. (2d) 788] (1939). It was there said:

" 'It is within the function of the legislature to make laws defining what breaches of the public peace shall be made punishable. Accordingly it may specify various degrees of the same crime and require a different measure of punishment for each. It is apparent that by the enactment of section 500 of the Vehicle Code the legislature has specified a lesser degree of punishment when the homicide is committed in the doing of an unlawful act not amounting to a felony while operating any vehicle, or while driving in a negligent manner, than is meted out in the cases of homicides otherwise committed in the doing of an unlawful act not amounting to felony or without due caution and circumspection. (Sec. 192, Pen. Code.) When the legislature has so spoken and the court has stated the law to the jury in the language of the applicable statutes, it is not required to do more. (*People* v. *Fowler,* 178 Cal. 657 [174 Pac. 892] ; *People* v. *Anderson,* 58 Cal. App. 267 [208 Pac. 324].) Therefore, what may amount to a lack of "due caution and circumspection" in cases of involuntary manslaughter committed in the doing of a lawful act, or what may constitute the driving of a vehicle "in a negligent manner," are questions to be decided by the jury according to the particular facts in each case guided by appropriate instructions from the court. The practical difficulties of obtain-

ing a conviction in automobile homicide cases arising under section 192 of the Penal Code may have been the incentive for the enactment of section 500 of the Vehicle Code. That is, in order to foster greater care in the operation of such dangerous instrumentalities, the legislature may have afforded a means by which appropriate punishment may be imposed upon all who have caused death through a breach of duty of due care in such operation.'

"Therefore the two crimes of involuntary manslaughter and negligent homicide are not identical." Furthermore and in any event, "under section 954 of the Penal Code as amended, the acquittal on count 1 does not necessarily result in an acquittal on count 3. (*People* v. *Kirsch,* 204 Cal. 599 [269 Pac. 447].)"

The judgment and order denying a new trial are affirmed.