[No. F002935. Fifth Dist. Mar. 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN TORRES SOTO, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Part IV is not certified for publication. (See Cal. Rules of Court, rules 976 and 976.1)

430

**COUNSEL**

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall, Eddie T. Keller, Eileen Ceranowski and Jane Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, Acting P. J.—

## INTRODUCTION

The primary issues in this appeal from a conviction of second degree murder and robbery are, first, whether the trial court erred in reimpaneling the jury to correct an ambiguity in the murder verdict after the jury had been discharged and the jurors had left the courtroom; second, if the court did so err, what is the result of the ambiguous verdict as originally returned—does it result in appellant's acquittal of the murder charge, a conviction of second degree murder, or a reversal and remand for a new trial? ■ In answer to the first question, we hold that the trial court had no power to reimpanel the jury after its discharge and the jurors had left the courtroom; hence, the later verdict of second degree murder and its entry in the record were of no effect. ■ In answer to the second question, we hold the original verdict returned by the jury may not be construed as a conviction of second degree murder but only as a general verdict of acquittal of murder. As a consequence, the double jeopardy clauses of the federal and state Constitutions forbid a remand for a new trial. Appellant is entitled to the entry of a judgment of acquittal on the murder charge. We do, however, affirm appellant's conviction of robbery, including the special allegation of a prior serious felony conviction under Penal Code section 667, subdivision (a).

## THE CASE BELOW

A first amended information was filed against appellant Juan Torres Soto and Adolpho "Chino" Castaneda on August 31, 1982, charging them in count I with murder (Pen. Code, § 187). It was alleged as a special circumstance that the murder was committed during the commission of a robbery (Pen. Code, § 190.2, subd. (a)(17)(i)). There were also two special allegations that appellant had previously been convicted of a serious felony (Pen. Code, § 667), a special allegation that in the commission of the murder offense the appellant personally used a firearm (Pen. Code, §§ 12022.5, 1203.06, subd. (a)(1)) and a special allegation that a principal in the commission of the murder was armed with a firearm (Pen. Code, § 12022, subd. (a)). In count II, appellant and Castaneda were charged with robbery (Pen. Code, § 211). It was specially alleged that appellant personally used a firearm in the commission of the robbery (Pen. Code, §§ 12022.5, 1203.06, subd. (a)(1)), and that a principal in the commission of the offense was armed with a firearm (Pen. Code, § 12022, subd. (a)). Count III charged

appellant and Castaneda with conspiracy to commit robbery (Pen. Code, §§ 182, 211) with three overt acts.

Appellant pleaded not guilty to all charges and denied the special circumstance and the enhancement allegations. A motion for separate trials for appellant and Castaneda was granted.

On October 22, 1982, appellant's motion to have the identity of confidential informants revealed was denied by the trial court without an *in camera* hearing. The court found: "There is no indication that the informant was a percipient witness to any fact which would tend to exonerate the defendant." This court subsequently granted a peremptory writ of mandate ordering the trial court to hold an *in camera* hearing on this matter.

Following the *in camera* hearing on January 5, 1983, the trial court ordered that the identity of informant Robert Renteria be disclosed. (The identity of a second informant, Leonard Ponce, was voluntarily disclosed at the hearing.) On May 27, 1983, appellant filed a motion to dismiss (a *Mejia-Hitch*[2] motion) based on the prosecutor's earlier failure to disclose the identity of the informants before they became unavailable to testify. This motion was denied as was a motion for sanctions for failure to preserve evidence.

After a four-week trial, the jury returned one verdict form finding appellant not guilty of count I, murder, but also fixing the murder to be of the second degree. In another form, the jury found as true that appellant had been armed with a firearm in the commission of the murder. Another verdict form found appellant guilty of count II, robbery; appellant was also found to have been armed with a firearm in the commission of the robbery. Still another verdict form found that murder was committed in the course of the robbery. The jury found not true the allegations that appellant used a firearm during the commission of the murder within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1), and not true that appellant personally used a firearm during the commission of the robbery. Appellant admitted one of his prior convictions. (The other prior conviction allegation had been stricken earlier.)

After the verdicts were read to the jury, the trial judge asked the jurors if those were their verdicts, and they unanimously affirmed they were. The parties waived a formal polling of the jury. At this point, a colloquy ensued

---

[2]*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]; *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192].

between the court and counsel to the effect that the verdict was of second degree murder,[3] and the jury was then discharged.

The following day, the trial judge noticed the ambiguity in the verdict forms noted above. He ordered the jury reimpaneled to clear up the ambiguity; the jury then found appellant guilty of second degree murder.

Appellant was sentenced on count I to fifteen years to life for second degree murder with one year for the Penal Code section 12022, subdivision (a) special allegation and five years for the Penal Code section 667 special allegation. Appellant's total determinate sentence was six years to be followed by the indeterminate fifteen-year sentence. Appellant was sentenced on count II, robbery, to the upper term of five years to be served concurrent with the indeterminate fifteen-year term for murder because of Penal Code section 654, the robbery term to be stayed pending completion of the murder sentence.

## The Facts

The victim was found shot to death on the front seat of an automobile in the parking lot of a Visalia market on the evening of June 17, 1982. The palm print of appellant's codefendant Castaneda was found on the roof of the car.

Earlier that evening at 7:30 p.m., a Mr. and Mrs. Lewis had driven by the parking lot and reported seeing a man sitting in a car with two men standing alongside it. One of the two men was tall and thin, the other, shorter and stockier. Mr. Lewis had about a six-and-a-half second look at the men. He could only say that the taller man had shoulder length hair and a moustache. Mrs. Lewis had a three second look at the men. She described the short man as having short black hair and a cream-colored complexion and the taller man as having long black hair, a moustache, a thin face, dark circles under his eyes, thick eyebrows and sharp features.

In a photo lineup on June 21, 1982, Mrs. Lewis tentatively identified one Juan "Big John" Vasquez as the shorter, stockier man. She did not identify

---

[3]The following discussion took place between court and counsel:
"THE COURT: You understand that the verdict is a verdict of guilty, second degree?
"MR. ALEXANDER [defense counsel]: Second degree, yes.
" . . . . . . . . . . . .
"MR. WALTON [prosecuting attorney]: Get this correct, the verdict is second degree murder?
"THE COURT: Yes.
"MR. WALTON: From what I heard, I didn't understand.
"THE COURT: Yes, second degree murder."

Castaneda, however, in this or a second photo lineup even though his picture was present in both.

Both Mr. and Mrs. Lewis identified appellant in a photo lineup on June 25, 1982, although Mr. Lewis thought appellant had been the taller, thinner man while Mrs. Lewis apparently thought he had been the shorter, stockier man.

Margie Vasquez, sister of Juan Vasquez whom Mrs. Lewis had tentatively identified at one photo lineup, testified at the preliminary hearing[4] that she was a heroin addict and had knowledge of the incident in question. She testified that she, her boyfriend Castaneda and appellant were together on the day of the murder and had discussed buying heroin. Ms. Vasquez claimed she gave Castaneda the name of a heroin dealer and that Castaneda and appellant arranged to meet him in the parking lot in question. Appellant had a gun when he left with Castaneda to meet the dealer, she claimed.

Ms. Vasquez testified she saw Castaneda and appellant one and a half hours later; appellant had blood on his hands and stated his hands were bloody because he had to move the man he had killed to get the man's wallet. Castaneda showed Margie $80 and some heroin; the heroin was then divided and used by Castaneda, appellant and Margie.

The chief investigating officer testified that he had spoken with two informants after the crime. The first informant told him Castaneda and "Big John" (Juan) Vasquez committed the crime, and the second informant said "Big John" Vasquez did the shooting. One of the informants told the officer he had gotten his information from Catalino Carranza who was reported to be the "connection" who put Castaneda (and appellant) in touch with the victim on the day of the crime.

Several witnesses testified appellant was having dinner with them at the approximate time of the shooting.

## DISCUSSION

I. *The trial court had no power to reimpanel the jury after it had been discharged and had left the courtroom; hence, the second degree murder verdict after reimpanelment of the jury is a nullity.*

The seminal case of *People* v. *Lee Yune Chong* (1892) 94 Cal. 379 [29 P. 776] holds that a jury is powerless to reconsider or amend its verdict

---

[4]Ms. Vasquez committed suicide in jail prior to trial, apparently for reasons not connected to this matter.

once it has been formally discharged by the trial judge and the jury has left the courtroom. In *Chong,* the jury found the defendant guilty of murder and indicated a sentence of life in prison, but neglected to determine the degree of the murder. The verdict was declared and recorded. The jury was discharged and left the courtroom. About 10 minutes later, before the jurors had left the courthouse, the trial court reimpaneled the jury and instructed them to amend the verdict by fixing the degree of the crime. The jury retired and found the defendant guilty of first degree murder and again fixed the penalty as life imprisonment. Finding the trial court's actions improper, the Supreme Court stated: ". . . but it is clear that during that time [after discharge] they were beyond the control of the court, had thrown off their characters as jurors, and had mingled with their fellow citizens, free from any official obligation." (*Id.,* at p. 384.) "It is quite clear that all the proceedings by which the court reassembled the persons who had constituted the jury, and instructed them to find another verdict, and the so-called second verdict itself, were nullities. 'With the assent of the jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed'; and 'after the verdict is received and the jury discharged, . . . . the control of the jury and of the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. . . . The office of a juror is discharged upon the acceptance of his verdict by the court.' [Citations.]" (*Id.,* at pp. 384-385.) "The case stands, therefore, as though there had been no attempt to revive the defunct jury, or to change the real verdict." (*Id.,* at pp. 385-386; see also *People* v. *Grider* (1966) 246 Cal.App.2d 149, 154 [54 Cal.Rptr. 497]; *People* v. *Thornton* (1984) 155 Cal.App.3d 845, 855-856 [202 Cal.Rptr. 448]).)

In the present case, after the inconsistent verdicts were returned by the jury, read by the clerk and affirmed by the jury in open court, the jury was discharged and left the courtroom, the trial judge specifically giving them permission to discuss the case with others. Pursuant to *Chong,* all actions of the trial court and the jury pertaining to the murder verdict after the discharge and loss of control by the court were nullities. Thus, we must examine the original verdict forms "as though there had been no attempt to revive the defunct jury, or to change the . . . verdict." (*People* v. *Lee Yune Chong, supra,* 94 Cal. at pp. 385-386.)

■ II. *The first verdict rendered by the jury constitutes a general verdict of not guilty of murder; hence, appellant is entitled to a judgment of acquittal on the murder charge.*

Count I charged appellant specifically with "murder in violation of section 187 . . . in that . . . [the appellant] did willfully, unlawfully, and with malice aforethought murder . . ., a human being." The jury returned a

verdict form of "not guilty of murder as charged in count I . . . and fix[ed] the degree of the offense as murder in the second degree."[5]

Appellant argues that the verdict "not guilty of murder as charged in count I" operates as a general verdict of acquittal of the murder charge as a matter of law. He cites Penal Code section 1151 which provides: "A general verdict upon a plea of not guilty is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the accusatory pleading. . . ." Since the jury explicitly found appellant not guilty or murder, he is entitled to the entry of a judgment of acquittal of the offense of murder.

Respondent counters by arguing that the clear import of the inconsistent verdict forms is that the jury intended to acquit appellant only of first degree murder and intended to find him guilty of second degree murder. The fact that in other verdict forms the jury found appellant had been armed with a firearm in the commission of the murder and that the murder occurred in the commission of the robbery, respondent argues, demonstrates beyond any question the jury's intent not to acquit appellant of murder. Respondent also points out that the jury had been instructed that the highest degree of homicide was to be considered first before considering lesser included degrees of homicide. (CALJIC No. 8.75 (4th ed. 1984 pocket pt.).) Respondent cites *People* v. *Holmes* (1897) 118 Cal. 444 [50 P. 675] for the proposition that we may affirm the conviction by construing the verdict as one of guilty of second degree murder.

Looking at the verdicts as originally returned by the jury in open court, there is no room to hold that the verdicts were the result of a mere "clerical" error by the jury. (Cf. *People* v. *Keating* (1981) 118 Cal.App.3d 172 [173 Cal.Rptr. 286]; *People* v. *Mestas* (1967) 253 Cal.App.2d 780, 784-785 [61 Cal.Rptr. 731]; *People* v. *Crawford* (1953) 115 Cal.App.2d 838, 842 [252 P.2d 963].) Here, the jury had heard the verdicts read by the clerk and in answer to a question by the judge, unanimously affirmed them as read. The error, therefore, must be deemed to have been a "deliberative" error which produced a mistaken or erroneous verdict the result of which

---

[5]In fairness to the jury, the inconsistency may have resulted from the trial court's failure to submit to the jury separate verdict forms for first and second degree murder. The court instructed the jury "If you unanimously agree that defendant is not guilty of murder in the first degree, you will have your foreman date and sign the not guilty verdict of the offense of murder in the first degree and you will determine whether defendant is guilty or not guilty of murder in the second degree. If you unanimously agree that defendant is guilty of the offense of murder in the second degree, you will have your foreman date and sign the guilty verdict of murder in the second degree and nothing further will be required of you as to the offense of murder. . . ." (CALJIC No. 8.75 (4th ed. 1984 pocket pt.) pp. 98-100, in relevant part.)

"has almost invariably been to bar impeachment of the verdict." (*People* v. *Romero* (1982) 31 Cal.3d 685, 694 [183 Cal.Rptr. 663, 646 P.2d 824].)

We recognize that some cases have held that uncertain verdicts will be liberally construed and their validity sustained if the intention of the jury can be clearly seen. (See Witkin, Cal. Criminal Procedure (1963) § 546, pp. 556-557 and cases cited.) However, none of these cases involve an explicit finding of "not guilty" of the crime charged. For example, in *People* v. *Holmes, supra,* 118 Cal. 444, the court was faced with interpreting a verdict in a murder case which found the defendants guilty of "involuntary manslaughter, *not* a felony." (Italics added.) Since involuntary manslaughter in the case before the jury was a felony, the defendants argued that the verdict was one of acquittal. The high court held the intention to convict of involuntary manslaughter was clear; it explained the jury's finding that it was not a felony by noting that the words "acts not amounting to a felony" as used in the statute defining one type of involuntary manslaughter had been read to the jury. It also noted that the jury had recommended the defendants "to the extreme mercy of the court" in its punishment thereby showing an intent to convict. The court concluded "whatever may have been the intention of the jury, by no possible construction could we reach the conclusion that the jury meant to acquit the defendants." (*Id.,* at p. 448.)

In *People* v. *Tilley* (1901) 135 Cal. 61, 62-63 [67 P. 42], the Supreme Court, after noting that the form of the verdict is to be regarded as immaterial if "the intention to convict of the crime charged be *unmistakably expressed*" (italics added), then noted Penal Code section 1162 which states "no judgment of conviction can be given unless the jury *expressly finds against the defendant* upon the issue, . . ." (Italics added.) From this the court concluded "there is no room for inference *outside the words of the verdict.* These must express the intention unequivocally; otherwise, the verdict must be regarded as insufficient." (Italics added, citing *People* v. *Ah Gow* (1879) 53 Cal. 628.) Under these principles, the colloquy which occurred between the court and counsel in the jury's presence concerning second degree murder cannot be used to clarify the words of the verdict.

We also note a basic principle that where two findings of fact are in "irreconcilable conflict" the one most favorable to the defendant will be honored. (See *People* v. *Novo* (1936) 12 Cal.App.2d 525 [55 P.2d 915]; *People* v. *Bales* (1946) 74 Cal.App.2d 732 [169 P.2d 262].) Although other cases hold that a conviction may be upheld even though part of the verdict conflicts with that conviction (*People* v. *Lopez* (1982) 131 Cal.App.3d 565 [182 Cal.Rptr. 563]; *People* v. *Federico* (1981) 127 Cal.App.3d 20 [179 Cal.Rptr. 315]), these cases involved conflicts between a verdict on the

charged offense and an enhancement finding or conflicting verdicts on separate counts which is expressly authorized by Penal Code section 954. (*People* v. *Amick* (1942) 20 Cal.2d 247, 251-252 [125 P.2d 25].)

■ The question thus remains as to how we should treat the jury's finding of not guilty of murder with the finding that it was of the second degree. Unlike the situation in *People* v. *Holmes, supra,* 118 Cal. 444 where the court said it could not possibly conclude that the jury meant to acquit the defendant, if we speculate as to the jury's intent in the present case, it is entirely conceivable that it first determined that the crime committed was second degree murder and that it occurred in the course of a robbery but that the prosecution did not prove beyond a reasonable doubt that appellant was the murderer. This would also explain the finding that the murder occurred in the course of the robbery. The fact that the jury found in other verdict forms that appellant was armed during the commission of the robbery and murder does not negate the effect of the not guilty of murder verdict. These findings made pursuant to the enhancement provision of Penal Code section 12022, subdivision (a), must yield to the jury's determination of the defendant's guilt of the crime charged. (*People* v. *Federico, supra,* 127 Cal.App.3d at p. 31.)

We conclude that because the verdict form expressly found appellant "not guilty" of murder and did not expressly find him "guilty" of second degree murder, we may not construe the verdict to find appellant guilty of second degree murder. To do this would be an impermissible alteration of a verdict contrary to the defendant's right to an unequivocal verdict on the question of his guilt.

If we cannot construe the verdict as one of guilt of second degree murder, the question remains as to how we should treat the verdict as rendered. Respondent argues that we may not construe the verdict as an acquittal of the murder charge because the verdict is "irregular" in form and therefore not entitled to recordation.[6] This being so, respondent argues, the only

---

[6]Penal Code section 1161 reads: "*In what cases court may direct a reconsideration of the verdict.* When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the Court cannot require the jury to reconsider it. If the jury render a verdict which is neither general nor special, the Court may direct them to reconsider it, and *it cannot be recorded* until it is rendered in some form from which it can be clearly understood that the intent of the jury is either to render a general verdict or to find the facts specially and to leave the judgment to the Court." (Italics added.)

Penal Code section 1164 reads: "When the verdict given *is such as the court may receive,* · the clerk, or if there is no clerk, the judge or justice, must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is

solution is a remand for retrial, citing *People* v. *Lee Yune Chong, supra,* 94 Cal. 379. The defendant in *Chong* had argued that a new trial could not be ordered since he had not asked for a new trial; the Supreme Court, however, responded by citing Penal Code section 1260 which authorizes an appellate court to reverse, affirm, or modify a judgment appealed from and "may . . . order a new trial." The court also quoted from *People* v. *Travers* (1888) 77 Cal. 176 [19 P. 268] that "'if a defendant in a criminal case is convicted and appeals, and the judgment is reversed, the appellate court may order a new trial, even though the defendant does not move for such new trial, and denies the power of the court to grant it.'" (*Chong, supra,* 94 Cal. at pp. 386-387.) The court concluded "Appellant's motion to be discharged was properly denied. While the failure of the jury to find the degree of the crime is an error for which the judgment must be reversed, it no more entitles appellant to a discharge than would any other reversible error committed during the progress of the trial." (*Id.,* at p. 386.)

The problem with applying the *Chong* analysis to the present case is that here, unlike the defendant in *Chong,* appellant was expressly found not guilty of the murder. This is more than simply a failure to fix the degree of the murder.

The trial court in the present case could not have declared a mistrial and discharged the jury for purpose of retrial after the verdict was returned. There was no disagreement by the jury; they affirmed the "not guilty of murder" verdict as read. In addition, there was no consent by appellant nor was there any legal necessity which would have prevented the jury from continuing its deliberations. (Pen. Code, §§ 1140, 1141; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713-714 [87 Cal.Rptr. 361, 470 P.2d 345].)

An "acquittal" for double jeopardy purposes has been defined as "'a resolution, correct or not, of some or all of the factual elements of the offense charged.'" (*Lee* v. *United States* (1977) 432 U.S. 23, 30, fn. 8 [53 L.Ed.2d 80, 87, 97 S.Ct. 2141], quoting *United States* v. *Martin Linen Supply Co.* (1977) 430 U.S. 564, 571 [51 L.Ed.2d 642, 650, 97 S.Ct. 1349].) In the present case, the jury's finding that appellant was not guilty of murder *as charged in count I* necessarily implied a finding that he did not "willfully, unlawfully and with malice aforethought murder . . ., a human being" as alleged in count I. Taking this at face value, appellant was acquitted of the murder charge; the verdict was "regular" enough to be recorded under Penal Code sections 1161 and 1164.

---

their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case." (Italics added.)

Finally, as explained in *Sanabria* v. *United States* (1978) 437 U.S. 54 [57 L.Ed.2d 43, 98 S.Ct. 2170], a verdict of acquittal may not be reexamined without putting the defendant twice in jeopardy. This principle has been described as " 'the most fundamental rule in the history of double jeopardy jurisprudence.' [Citation.] The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is 'based upon an egregiously erroneous foundation.' [Citations.]" (*Id.,* at p. 64 [57 L.Ed.2d at pp. 53-54].)

 III. *The prosecutor's failure to reveal the identity of a confidential informant until ordered to do so did not deprive appellant of a fair trial.*

Appellant's basic premise is that the prosecutor's failure to disclose the identity of Robert Renteria, a confidential informant, until ordered to do so by the trial court amounted to suppression of evidence by the prosecutor since Robert Renteria had information from Catalino Carranza—the person appellant's partner Castaneda allegedly contacted to arrange the drug buy—that "Big John" Vasquez, not appellant, was involved in the crimes. Specifically, appellant argues: ". . . this same individual [Carranza] and his exculpatory evidence were withheld from the defense by reason of the failure of the prosecutor to disclose Robert Renteria's identity, until compelled to do so, *and* by the failure of the prosecutor even to disclose the fact of Catalina [*sic*] Carranza's being in possession of the critical exculpatory information."

 There is no question that the prosecutor has the duty to disclose the identity of an informant who has material information as to a defendant's guilt or innocence. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234].) In addition, the court in *People* v. *Goliday* (1973) 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537] holds that " 'the police and the district attorney [must] undertake *reasonable efforts* in good faith to *locate* the informer so that either party or the court itself [citation] could, if it so desired, subpena him as a witness.' [Citation.]" (*Id.,* at p. 778.) The problem with applying these authorities to the present case is that Carranza was not an informant. Further, the information held by Renteria regarding appellant's involvement or noninvolvement in the crimes was merely hearsay of what Carranza had told him. Nevertheless, following the *in camera* hearing, the court ordered that Renteria's identity be revealed, and the prosecutor complied. Carranza, however, had left the country by this time. Since the trial court had ruled prior to the *in camera* hearing that Renteria did not have evidence critical to the defense requiring that his identity be revealed, the prosecutor was entitled to rely on this finding at least until the *in camera* hearing resulted in a finding to the contrary.

Appellant cites other authorities in support of his real contention—that the prosecutor improperly withheld critical exculpatory evidence received from Carranza. *People* v. *Ruthford* (1975) 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341] holds that "either intentional or negligent prosecutorial suppression of substantial material evidence favorable to the accused denies to the defendant a fair trial and requires reversal. [Citations.]" (*Id.,* at p. 406.) The court in *People* v. *Shaparnis* (1983) 147 Cal.App.3d 190 [195 Cal.Rptr. 39] expounded on this general principle as follows: "In *Brady* v. *Maryland* (1963) 373 U.S. 83 . . ., the United States Supreme Court held '. . . the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' [Citation.] The California Supreme Court in *In re Ferguson* (1971) 5 Cal.3d 525 . . . imposed a stricter duty upon prosecutors by requiring them to disclose substantial material evidence favorable to the accused without request. [Citation.] When the evidence bears on the credibility of a key prosecution witness, a defendant must show the evidence was substantial, material and favorable to him. A defendant need not show prejudice under *People* v. *Watson* . . . . Instead, once substantial materiality is shown, the judgment must be reversed unless the People establish the failure to disclose the evidence was harmless beyond a reasonable doubt. [Citation.] In the context of this case substantial material evidence requiring reversal means 'evidence of such significance that with reasonable probability it could have affected the outcome of the trial' or 'might have caused a different verdict.' [Citation.]" (*Id.,* at pp. 193-194.)

■ Based on the record before us, we are not persuaded that there was a suppression of evidence. Catalino Carranza was identified in the police reports provided to appellant, and he was subpenaed and present at the preliminary hearing. Investigating Officer Jay Salazar testified that he disclosed all information he received from Carranza in the police reports and that he had unsuccessfully tried to recontact Carranza after the preliminary hearing for a followup interview. At appellant's first motion for disclosure of informants, Officer Salazar testified that one of the informants had gotten his information from a person involved in the drug connection which preceded the murder and robbery—a direct reference to Carranza. Significantly, appellant was able to present evidence to the jury that Carranza had identified "Big John" Vasquez, not appellant, as one of the perpetrators of these crimes. Also, "Big John" Vasquez was identified as a possible suspect in these crimes as early as June 24, 1982. In short, it does not appear that the prosecutor concealed critical evidence from the defense regarding Catalino Carranza and that the defense was as free to explore Carranza's knowledge of these crimes as was the prosecution.

The present case is distinguishable from *People* v. *Shaparnis, supra,* 147 Cal.App.3d 190 where a police report containing critical information from a previously undisclosed witness was withheld from the defense. Our situation is closer to that in *People* v. *Rance* (1980) 106 Cal.App.3d 245 [164 Cal.Rptr. 822] where the court pointed out: "Here, Officer Zerbe was not a confidential informant nor did the People in any way bring about his absence. His identity and (business) address were apparent to the defense from compliance with the original discovery request. From that time until the time of trial the defense was just as capable as the prosecution of keeping track of his whereabouts. Appellant was not entitled to a dismissal because of Zerbe's absence." (*Id.,* at p. 254, fn. omitted.)

We conclude there was no prosecutorial suppression of evidence.

IV. *The prosecutor's remarks to one of appellant's alibi witnesses during trial does not compel a reversal.**

. . . . . . . . . . . . . . . . . . . . . .

V. *Disposition*

The judgment is reversed as to the conviction of second degree murder. The trial court is directed to enter a judgment of acquittal on the murder charge. The judgment is affirmed as to count II, robbery. Since the concurrent sentence of the robbery term with the murder term was a nullity under Penal Code section 654 (*People* v. *Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552]), the cause is remanded for resentencing on count II. If it so chooses, the trial court may impose a consecutive sentence enhancement pursuant to Penal Code section 667 for appellant's prior serious felony conviction.

Martin, J., and Best, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 1, 1985. Kaus, J., and Lucas, J., were of the opinion that the petition should be granted.

*See footnote 1, *ante,* page 428.