[Crim. No. 2439.   Second Appellate District, Division Two.—March 2,
1934.]

THE   PEOPLE,   Respondent,   v.   RUSSELL   EVERETT
LAND, Appellant.

Joseph L. Carr for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Defendant and one Walter Blankenship were jointly charged in an information filed by the district attorney of Los Angeles County with the crime of grand theft. On the trial of defendant Land the jury returned a verdict of guilty. From the judgment of conviction entered upon said verdict and from the order denying his motion for a new trial, defendant Land has appealed.

Appellant urges (1) that the court erred in permitting the testimony of a witness taken at the preliminary hearing to be read in evidence at the trial, and (2) that the verdict lacks the support of evidence.

(1) It is contended that the foundation laid was insufficient to show that the witness Gleason could not with due diligence be found within the state. It was admitted that Gleason testified at the preliminary hearing of appellant and was cross-examined by his counsel. It was also shown by a witness from the sheriff's office that telegrams were sent to Gleason at Jerome, Idaho, and replies received thereto, and that following these Gleason appeared in Los Angeles prior to the preliminary hearing, and that he left about two days after such hearing saying that he was going back to his home in Jerome, Idaho.

The term "due diligence", as used in section 686 of the Penal Code, is a relative one, and its application

depends upon the particular facts of each case. (*People* v. *Fay*, 82 Cal. App. 62 [255 Pac. 239].) It would seem that where the introductory evidence discloses, as it does here, that the witness is a nonresident of the state, such fact alone would show that no amount of diligence in the use of the process of the court would avail. ▉ The question of what constitutes "due diligence" addresses itself to the discretion of the trial court upon the facts and circumstances shown, and only in case of an abuse of such discretion would an appellate court be justified in reversing a criminal case where the judgment was otherwise correct. (*People* v. *Ramos*, 52 Cal. App. 491 [199 Pac. 544].) ▉ That the conclusion reached by the trial court as to the foundation evidence is correct is demonstrated by the testimony of the witness Gleason, which shows that his home is in Jerome, Idaho, and that he was engaged in the mercantile business there, but that at the time he met appellant there he was chief deputy sheriff of the county in which he lives. Appellant himself testified that Gleason called on him after appellant went to Idaho and told him that he (Gleason) had a warrant from California and would have to take appellant and a car then in his possession "down". Under the circumstances of this case we fail to see that the trial court abused its discretion in admitting the testimony of Gleason in evidence.

▉ (2) The evidence shows that a Chevrolet coach belonging to one Schaffert was stolen on June 25, 1932, by Blankenship while parked on a street in Whittier, California; that appellant and Blankenship went to the Bassett Wrecking Company, near Puente, on the same day, where Blankenship purchased a Chevrolet roadster for $30; that the certificate of registration of the roadster was changed to show that it was a coach, the engine numbers of the stolen coach were effaced and the number of the roadster engine placed on the engine block of the coach, and that the license plates of the roadster were affixed to the coach. So far as the evidence shows, Blankenship changed the numbers. There is also evidence from which the jury could have found that appellant went to the yard of the Bassett Wrecking Company once or twice before the roadster was purchased; that he said he looked at the car bought by Blankenship and that it was a coach. On the twenty-

seventh day of June, two days after the coach was stolen, appellant left for Idaho in it. He was there interviewed by Gleason, who says that he asked appellant if the coach was his and that the latter said it was. Gleason then said: "I told him that I would have to ask him then to drive it in as far as town, that I wanted to investigate it. He asked me what for, and I told him we had authorization from the officers in California." Appellant then said he would have to get the key, following which he went into the house and did not come back. The car was taken to town by Gleason, who found the secret number on the car identifying it as the one stolen from Schaffert. Appellant explains his flight by saying that the officer said he had a warrant from California and would have to take him and the car down, and that he thought his wife had attached the machine and wanted him arrested for failure to provide.

The car was in appellant's possession from June 27, 1932, until he left it in Idaho when the officer called on him, and we think there is sufficient evidence in addition to the fact of possession of the stolen machine to justify the conclusion that appellant was jointly interested with Blankenship in the theft thereof, in spite of his story that he bought it from Blankenship for $30 and in spite of his explanation of his flight from the deputy sheriff in Idaho when informed that the latter wished to investigate the car. The jury had a right to infer consciousness of guilt on the part of appellant from such flight.

Judgment and order affirmed.

Stephens, P. J., and Craig, J., concurred.