[Crim. No. 3590. Second Dist., Div. Three. Oct. 30, 1942.]

THE PEOPLE, Respondent, v. JODIE BRYAN McILVAIN, Appellant.

324

Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHINN, J.—Defendant was found guilty by jury verdict of the crimes of rape committed with force and violence and of assault by means of force likely to produce great bodily injury, charged by separate counts of an information. Sentence was imposed upon each conviction, the term of imprisonment on the assault charge being ordered to run concurrently with that upon the rape charge. Defendant's motion for new trial was denied and he gave oral notice of appeal, which will be regarded as an appeal from the judgment as to each count and from the order denying his motion for new trial as well. Upon the appeal he relies upon the following grounds for reversal: (1) That the evidence was insufficient to establish his guilt of either offense; (2) that the court erred in the admission of testimony of the prosecutrix given at the preliminary examination upon an insufficient showing of inability on the part of the People to have her present at the trial; (3) alleged error in the reopening of the case for the receipt of further evidence on behalf of the People, and (4) that the crime of assault by means of force likely to produce great bodily injury is included within the crime of forcible rape and that therefore he has been convicted twice for a single offense. There is no merit in any of these contentions.

The prosecutrix, an unmarried woman 33 years of age, accompanied defendant, 27 years of age, and two other young men in an automobile to a dance hall in Santa Monica, several miles from the home of the prosecutrix in Culver City. After dancing until the place was closed and having indulged in moderate drinking, defendant and prosecutrix started for the latter's home at about 1:30 a. m. in an automobile which defendant had borrowed from the other young men. They arrived at the home of the prosecutrix at about 7 a. m. where they met the husband of a niece of the prosecutrix. The intervening time had been spent in the car, all but an inconsiderable part of it at a secluded spot off the highway where defendant had driven and stopped the car. During the four or five hours while the car was thus parked defendant was

continuously endeavoring to rape the prosecutrix against her vigorous resistance. While he failed to completely accomplish his purpose defendant did succeed in going far enough in his attempt to satisfy the law as it defines the crime of rape. In the struggle defendant threw the prosecutrix from the front seat into the rear seat of the car and onto floor of car and repeatedly struck her; she was bruised, sustained a one-inch laceration of the wall of the vagina as a result of the insertion of defendant's fingers, which caused her pain and which was accompanied by a threat of defendant that if she did not submit he would further injure her. Upon her arrival home prosecutrix stated to her niece's husband, in the presence of defendant, that she had been wrestling with defendant since 1:30; defendant said he was sorry and that he had brought her home. The prosecutrix went to bed, her sister came for her about 10 o'clock that morning, found her in bed and took her to a physician, where she was physically examined. All of the foregoing facts were testified to by the prosecutrix at the preliminary examination of defendant and this testimony was used at the trial. The physician testified that the examination disclosed evidence of the laceration hereinbefore mentioned. Defendant admitted having been in the car with the prosecutrix at the place and for the time described by the latter, admitted having embraced and kissed her; denied that she objected to his advances, that he had any thought of improper conduct or that he committed any of the acts of force and violence as testified to by the prosecutrix. A police officer who placed defendant under arrest testified that defendant then told him that he had driven the prosecutrix home, had stopped the car at some location, that he and the prosecutrix had wrestled about for awhile, that he was so drunk he did not remember exactly what happened, and that he did not blame prosecutrix for having him arrested. The evidence was sufficient to sustain the verdicts of guilty under both counts of the information.

 In laying a foundation for the introduction of the evidence of the prosecutrix given at the preliminary, the People proved that an investigator from the district attorney's office went to the home of the prosecutrix on March 6, twenty-one days before the trial, and again on March 17 and found no one at home. He then went to the office of the physician, for whom he had a subpoena and who was a witness in the case and

was referred by him to prosecutrix' sister, whom he also questioned. The sister testified that her former home and that of prosecutrix had been in Colorado; that their aged parents and other relatives lived there; that prosecutrix had told her that she was going to Colorado; that she decided definitely to go and left on the 14th of March; that prosecutrix took all of her possessions with her, including her clothes; that she, the witness, had received a letter from her mother stating that prosecutrix had arrived in Colorado Springs and that she still was in the State of Colorado. She produced a letter identified as having been written by her mother in Colorado Springs and which was dated March 17 and received by the witness March 19. The letter was handed to counsel for defendant, who said, ''I object to this exhibit being read, except the portion referring to Collie [the prosecutrix].'' The portions not objected to were then read and consisted of statements that the prosecutrix had arrived and with others had gone on to Denver. The witness further testified that she had not seen her sister in California since receiving the letter and was positive that she had not returned. Upon this showing defendant's objection to the introduction of the evidence given at the preliminary was overruled and the testimony was read. It is now contended that the efforts made to locate the witness did not amount to due diligence so as to justify the receipt in evidence of the testimony of the witness given at the preliminary hearing, as required by section 686 of the Penal Code. The officer served a subpoena on the sister and no doubt gained from her information that the prosecutrix had departed for Colorado under the circumstances which she later described when called as a witness. It was not shown that the officer who made the search for the witness, or the district attorney, had any reason to believe at the time that the statements of the sister were untrue or that further efforts to locate the witness would be worth while. Upon the receipt of credible and authentic information that the witness had left the state shortly before the trial, and in the absence of any reason to believe that she had returned, further search in the few days remaining before trial was not required. The question was one addressed to the discretion of the court; in the absence of abuse of discretion in the ruling, and none was shown, the decision is conclusive upon appeal. (*People* v. *Levine*, (1936) 12 Cal.App.2d 410, 412-13 [55 P.2d 556]; *People* v. *Tiracorda*,

(1935) 8 Cal.App.2d 517, 519-20 [48 P.2d 116]; *People* v. *Land*, (1934) 137 Cal.App. 196, 198 [30 P.2d 433]; *People* v. *James*, (1933) 133 Cal.App. 751 [24 P.2d 859].)

██ During the arguments, on motion of the district attorney, the taking of evidence was reopened and the testimony of a police chemist was received to the effect that he had just made an examination of one of the garments of the prosecutrix which had been introduced as an exhibit at the preliminary and that he had found thereon what might have been a blood spot. Defendant was given an opportunity to offer evidence in rebuttal but did not do so or request a continuance. Of this testimony appellant here says: "The testimony itself amounts to no evidence when scrutinized. . . . If it had been a conclusive test perhaps the evidence might have been of some probative value, but as it was, it had no value as evidence. . . ." It appears from a statement of the district attorney, in requesting permission to offer the additional testimony, that some statement had been made by defendant's counsel during the argument respecting the articles of clothing. The arguments are not contained in the transcript but it is fair to infer that the additional testimony was offered to meet some claim on the part of defendant that the People's case was incomplete in the particular which was covered by the testimony in question. However that may be, the ruling was within the discretionary powers of the court in controlling the conduct of the trial. No abuse of discretion was shown. (*People* v. *Roberts*, (1933) 131 Cal.App. 376, 385-6 [21 P.2d 449, 22 P.2d 25]; *People* v. *Hamil*, (1925) 73 Cal.App. 649, 653-4 [238 P. 1075]; *People* v. *Anderson*, (1922) 57 Cal.App. 721, 728 [208 P. 204]; *People* v. *Kennedy*, (1920) 48 Cal.App. 545 [192 P. 556]; *People* v. *McPherson*, (1907) 6 Cal.App. 266, 270 [91 P. 1098].)

██ The final proposition advanced is that the offense of assault by means of force likely to produce great bodily injury is included within the offense of forcible rape and that inasmuch as defendant was found guilty of rape, to punish him for the included crime of assault would constitute double punishment for a single offense within the meaning of section 13, article I of the Constitution. No authority is cited which supports this contention, nor is it tenable. We have found no case involving the question of double punishment as applied to these two offenses, which is somewhat surprising in view of

328

the fact that they are so frequently committed in the course of a continuous series of acts culminating in the commission of rape; but whether this situation results from the rarity of prosecution for both offenses or because the question of double punishment has not been raised on appeal is unimportant. It is clear to us that there is no merit in the contention that defendant has suffered double punishment.

█ Where it appears from definitions of two offenses that all of the elements of one are included in the other, a conviction of the latter offense is also a conviction of the former. This follows as a necessary conclusion of law because the statutes furnish conclusive proof of the existence of identical elements.

█ There is no such proof as to the two crimes involved here. The crime of rape here involved is defined by section 261 of the Penal Code as an act of sexual intercourse accomplished with a female . . . where she resists but her resistance is overcome by force or violence. The crime charged in count II is defined in section 245 of the Penal Code as follows: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the State prison" etc.

The information charged the commission of rape by force and violence in conventional form. The charging portion as to count II reads as follows: "That the said JODIE BRYAN MCILVAIN, on or about the 20th day of November, 1941, at and in the County of Los Angeles, State of California, did willfully, unlawfully and feloniously assault one Collie Rae Young, a human being, by means of force likely to produce great bodily injury, to-wit, by hitting and striking said Collie Rae Young about the head and body with said defendant's fists, and tearing the vagina of the said Collie Rae Young, all with great force and violence and all of which was likely to, and which did, produce great bodily injury to the said Collie Rae Young."

█ The words "force" and "violence" found in section 261 have slightly different shades of meaning; Webster's New International Dictionary, 2d edition, unabridged, under the word "force" says: "Force (see power), the most general term, implies physical power exerted upon persons or things; . . . Violence denotes the unjust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage, or

fury." Under synonyms it is said, "Force, violence, compulsion, coercion, constraint, restraint agree in the idea of the exertion of power against will, wish or consent." Under synonyms for "violence" the author says, "See force." The words as used in defining rape do not import a degree of force or violence likely to produce great or any bodily injury. Considered with their context the words mean a degree of force or violence necessary to overcome whatever resistance is encountered.

The courts no longer follow the primitive rule that there must be resistance to the utmost. A woman who is assaulted need not resist to the point of risking being beaten into insensibility. If she resists to the point where further resistance would be useless or, in the words of the statute, until her resistance is overcome by force or violence, submission thereafter is not consent. (*People* v. *Norrington*, (1921) 55 Cal. App. 103 [202 P. 932] ; *People* v. *Brown*, (1934) 138 Cal.App. 748 [33 P.2d 460].)

At the outset of our discussion of defendant's contention that he has been twice convicted for a single offense, we might say that this is true as to the offense of simple assault, which is involved in both crimes, but that that fact is immaterial because of the other elements that were involved in the offenses charged. (*People* v. *Kimmerle*, (1928) 90 Cal.App. 186 [265 P. 525], and cases hereinafter cited.) Likewise immaterial is the fact that both offenses were committed simultaneously. They were not thereby merged. (*People* v. *Parker*, (1925) 74 Cal.App. 540, 549 [241 P. 401].)

In *People* v. *McDaniels*, (1902) 137 Cal. 192 [69 P. 1006, 92 Am.St.Rep. 81, 59 L.R.A. 578], the court reviewed the authorities, pointed out the conflicting rules respecting the question of double jeopardy resulting from a former conviction or acquittal (extensively briefed in note in 92 Am.St.Rep. 89) and at page 199 stated the law as it is followed in our own state as follows: "So it may be concluded that in England, since Lord Denman's Act, and in this country wherever a statute permits a conviction of any lower offense necessarily included in a higher one with which the defendant is charged, a conviction or acquittal of such higher offense is a bar to a subsequent prosecution for any lower offense necessarily included in it, and, *e converso*, a conviction for any lower

offense necessarily included in the higher, is a bar to a subsequent prosecution for such higher offense, and this conclusion is fully sustained by the prior decisions of this court hereinbefore cited.''

In *People* v. *Coltrin*, (1936) 5 Cal.2d 649 [55 P.2d 1161], at 660, the court said: ''If the act involved in one charge is necessarily involved in the other and is merely incidental to that charge but one offense is committed and it cannot be carved into two offenses in order to inflict a double punishment. (*People* v. *Mazzola*, 99 Cal.App. 682 [279 P. 211].) But where the two offenses are entirely separate and distinct and the one is not necessarily included in the other, a prosecution for the one is no bar to a prosecution for the other even though the same testimony may be applicable to both. (*In re O'Connor*, 80 Cal.App. 647 [252 P. 730].)''

In *People* v. *Day*, (1926) 199 Cal. 78 [248 P. 250], the defendant had been convicted of violation of section 244 of the Penal Code (throwing acid upon the person of another) and also of section 245 of the Penal Code quoted above. In affirming the double conviction which resulted from a single ''transaction'' the court pointed out that there is an element of the offense defined by section 245 not present in the offense defined by section 244, stating (p. 86) : ''To find the defendant guilty under the first count it was immaterial whether the victim did or did not suffer great bodily harm or whether the acid thrown had the property of causing great bodily harm. To find the defendant guilty under the second count it was necessary to find that the means and force used was likely to produce great bodily harm. In other words, if the jury believed that the acid thrown was not a means or force likely to produce great bodily harm, it was at liberty to acquit upon the second count and convict upon the first count. It is immaterial that the evidence may show that as a matter of fact the acid was means likely to produce great bodily harm and that as a matter of fact the victim did suffer great bodily harm. The determination of this fact was for the jury.''

Under the settled law of this state if a violation of section 245 of the Penal Code involves a factual element not necessarily involved in the commission of the crime of forcible rape, the two are distinct offenses for which separate convictions may be had. It is immaterial whether the force used and which

would constitute a violation of section 245 was also the force used in the commission of the crime of forcible rape.

The question is not whether force likely to produce great bodily injury was actually used in accomplishing the rape, not whether it was necessary in the particular instance to use such force to overcome resistance or whether rape is usually accomplished by means of such extreme force, but it is whether the crime of forcible rape is possible of commission without the use of force likely to produce great bodily injury. If it is possible, then the use of such force is not necessarily an element of forcible rape. In this connection no distinction is to be drawn between the actual and the attempted use of force in a violation of section 245; defendant's argument assumes the actual application of force which necessarily includes both ''attempt'' and ''ability.'' We must inquire as to the nature of the two offenses. Rape is further defined by section 263 of the Penal Code as follows: ''The essential guilt of rape consists in the outrage to the person and feelings of the female. Any sexual penetration, however slight, is sufficient to complete the crime.''

The gravamen of the offense of forcible rape is the violation, sexually, of the person of a female by the use of force or violence sufficient to overcome her resistance. Bodily injury is not of the essence of the offense.

The gravamen of the other offense is the likelihood of bodily injury as a result of the force used or attempted to be used. The degree of force used is not as important as the manner in which it is used. A slight blow on the eye might be far more injurious than a severe blow in the back. The defendant here, according to the testimony of the young woman, repeatedly struck her, threw her from one seat to another and onto the floor of the car, inserted his fingers into her vagina in order to hurt her and make her submit and he used sufficient force to tear the wall of the vagina. That was a violation of section 245. That crime was as distinct from rape as would have been an assault with a deadly weapon, although perhaps not recognizable as clearly without somewhat closer inspection. The element of the use of force likely to produce great bodily injury is over and above the force ''necessarily'' involved in overcoming resistance in the crime of rape just as the use of a deadly weapon would be. It is this added

element that justifies the double conviction and punishment. Defendant's argument that there is no such additional element takes for a premise that there can be no forcible rape without the use of force likely to produce great bodily injury. The fallacy of the argument is demonstrable without the citation of precedent, the possession of technical knowledge or the use of a vivid imagination. Wherefore we undertake to say that a strong man could overcome the resistance of a frail woman or a man of no unusual strength could overcome the resistance of a well intoxicated woman, or one suffering from serious physical disability and commit the crime of rape without the use of force likely to produce great bodily injury. If this is not true, why not? If it is not true, then it would be proper to instruct the jury in a prosecution for rape by means of force or violence that the defendant should be acquitted of rape unless the proof established the use of force or violence likely to produce great bodily injury. This would give us a new definition of rape; and unless one charged with forcible rape could be acquitted of that offense and convicted of violation of section 245 (and without specifically charging the latter offense), which would do violence to the clear legal definition of the two offenses, there can be no inherent inclusion in the former offense of all of the elements of the latter. (*People* v. *Herbert*, (1936) 6 Cal.2d 541, 545 [58 P.2d 909].)

If it be suggested that the act of sexual intercourse is itself one likely to produce great bodily injury there are several obvious reasons why that argument is beside the point. First and foremost is the fact that the act of intercourse is not the force by which resistance is overcome. Again, in rape, the penetration need be only infinitesimal and may cause not the slightest injury. It is no more reasonable to say that the act of sexual intercourse committed by force constitutes an assault by means of force likely to produce great bodily injury than to say it is an assault with a deadly weapon. As to the fallacy of the latter suggestion, see opinion of Chief Justice Bleckley of the Supreme Court of Georgia in *Jackson* v. *State*, (1892) 91 Ga. 322 [18 S.E. 132, 44 Am.St.Rep. 25].

Another suggestion that comes to mind, but which is irrelevant, is that women do as a rule resist attempts at rape to the utmost and frequently until they have received the most shocking injuries or lose consciousness. If the law demanded such extreme resistance, lest they be held to have consented,

there would be more plausibility to defendant's argument. The fact that in this state no recognition is given to the harsh rule as to resistance which has at times been followed in other jurisdictions, is eloquent proof of the cruelty of the latter rule which compelled a woman to continue resistance against her attacker solely to protect her honor, after it had become useless to further defend her person. And may it not have been for the protection of women against the use of force likely to produce great bodily injury that the rule requiring resistance to the uttermost was modified?

Construing the evidence most strongly against defendant, as we must, it appears that he deliberately perpetrated two distinct crimes. There is no sufficient reason for holding that having committed the offense of assault by means of force likely to produce great bodily injury, he escaped liability for that crime by committing the additional crime of rape. Perhaps it would be a good thing to prosecute such offenders for both crimes. There are many cases of attack where the perpetrators of rape and attempted rape inflict serious injuries by means of force far more brutal and severe than were the uncouth methods of the defendant.

The judgment as to each count and the order are affirmed.

Wood (Parker), J., concurred.

SCHAUER, P. J.—I concur in the judgment as to count I and in the opinion so far as it supports that portion of the judgment. I dissent as to the affirmance of count II.

In my opinion the offense of "assault by means of force likely to produce great bodily injury" is necessarily included within the type of forcible rape charged in the information and depicted in the evidence in this case. The main opinion, whether or not it recognizes the fact, proceeds on a failure to distinguish between the offense of battery and that of assault. Assault does not require actual application of force. It is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) A battery is "any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) An assault "by any means of force likely to produce great bodily injury" is by section 245 of the Penal Code made

punishable as a felony. It was of this type of assault that defendant was convicted under count II.

Certainly it is conceivable that the same defendant could commit two distinct crimes involving the same victim on the same day. One of those crimes could be forcible rape and one could be assault by means of force likely to produce great bodily injury. But the main opinion here does not treat of any such situation. The conviction in this case stands not upon any separate incident but solely upon the acts of defendant in committing the crime of forcible rape of which he was convicted under count I. His acts in committing the rape are precisely the same acts upon which his conviction under count II depends.

It is to be remembered that "assault" is only an attempt to commit battery. The very force necessary to overcome the resistance essential to constitute the offense of forcible rape, *coupled with the implications of such attempt,* which if successfully carried out include not only physical, mental, and psychic shock, but also a likelihood of causing the victim to become pregnant, should be held to be such as is "likely to produce great bodily injury." Surely pregnancy as a result of forcible rape is great bodily injury. So also is the "outrage to the person and feelings of the female" which constitutes the essential guilt of rape.

I am not willing to hold that as a matter of law a woman who has been forcibly raped has not suffered great bodily injury. Furthermore, the fact as to whether the ultimate object of the rape is fully accomplished is not necessarily material; i.e., complete penetration and emission are not essential to constitute the crime of rape; neither is either essential to constitute the crime of *assault* by means of force likely to produce great bodily harm. Since an assault is merely an *"unlawful attempt* . . . to commit a violent injury," the *attempt* does not need to reach fruition. If the attempt is carried far enough to constitute rape then indubitably it has been carried far enough to evidence the "unlawful attempt" constituting assault. The necessary *implications* of the force used in such attempt have been previously surveyed.

The judgment as to count II should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1942.