Filed 8/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re RICK RYAN FEBBO<br><br>on Habeas Corpus. | G057667<br><br>(Super. Ct. No. M-17593)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Cheri T. Pham, Judge. Affirmed.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Gregory J. Marcot, Deputy Attorneys General, for Appellant.

C. Matthew Missakian, under appointment by the Court of Appeal, for Respondent.

\*          \*          \*

# INTRODUCTION

Proposition 57, enacted by the voters in November 2016, amended the California Constitution to permit early parole consideration for "[a]ny person convicted of a nonviolent felony offense." (Cal. Const., art. I, § 32, subd. (a)(1) (section 32(a)(1).) The California Department of Corrections and Rehabilitation (CDCR), pursuant to its authority to promulgate regulations "in furtherance of these provisions" (*id.*, subd. (b)), adopted regulations which rendered ineligible for early parole consideration any inmate who "is convicted of a sexual offense that currently requires or will require registration as a sex offender." (Cal. Code Regs., tit. 15, § 3491, subd. (b)(3) (Title 15, section 3491(b)(3).) This ineligibility applies categorically to any and all offenses requiring registration as a sex offender, regardless whether or not they might be characterized as violent.

Rick Ryan Febbo was deemed ineligible for early parole consideration because he is serving a sentence and has prior convictions for indecent exposure, an offense requiring registration as a sex offender under Penal Code section 290. He filed a petition for writ of habeas corpus in the trial court to challenge the decision denying him eligibility for early parole consideration. The trial court concluded the regulation making him ineligible for such consideration violated Proposition 57 and granted Febbo relief. The CDCR[1] appealed.

We hold that indecent exposure under Penal Code section 314 is a nonviolent felony offense as that term is used in section 32(a)(1). The CDCR regulations are therefore invalid to the extent they deny early parole consideration to inmates based solely on a current or prior conviction for indecent exposure. As a consequence, Febbo cannot be denied eligibility for early parole consideration solely based on his convictions for that offense.

---

[1] Febbo's habeas corpus petition named as a respondent Scott Kernan, as Secretary of the CDCR. We refer to appellant, respondent below, as the CDCR.

We decline to resolve the broader issue of whether the CDCR may categorically exclude from eligibility for early parole consideration all inmates currently serving sentences or having prior convictions for any offense requiring sex offender registration under Penal Code section 290. Although indecent exposure is a nonviolent felony offense, we recognize there are unquestionably violent crimes—for example, rape of a drugged person in violation of Penal Code section 289, subdivision (e)—which require sex offender registration but are not identified as violent felony offenses in Penal Code section 667.5, subdivision (c) (section 667.5(c).) Section 32(a)(1) does not restrict the CDCR's authority to promulgate regulations denying eligibility for early parole consideration to inmates serving time for violent felony offenses not identified in section 667.5(c).

## BACKGROUND LAW

## I.

## Proposition 57

California voters approved Proposition 57, called the Public Safety and Rehabilitation Act of 2016, at the November 2016 general election. Proposition 57 added article I, section 32 to the California Constitution, which, among other things, permits early parole consideration for prison inmates convicted of nonviolent felony offenses. (§ 32(a)(1).) In relevant part, section 32(a)(1) states: "(1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense."

Proposition 57 was a response to federal court orders requiring California to implement measures to reduce its prison population. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) argument in favor of Prop. 57, p. 58.) That purpose, and others, are stated expressly and directly in article I, section 32, subdivision (a) of the California

3

constitution: "The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law." (*Ibid.*) These purposes reflect those identified in the uncodified text of Proposition 57, which were: "'1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.'" (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 57, § 2, p. 141, quoted in *In re Edwards* (2018) 26 Cal.App.5th 1181, 1185.)

## II.

## Regulations Promulgated by the CDCR

Proposition 57 granted the CDCR authority to adopt regulations to implement early parole consideration: "The [CDCR] shall adopt regulations in furtherance of these provisions, and the Secretary of the [CDCR] shall certify that these regulations protect and enhance public safety." (Cal. Const., art. I, § 32, subd. (b) (section 32(b).) Pursuant to this authority, the CDCR promulgated and adopted final regulations, issued in May 2018, and certified them in accordance with section 32(b). (*In re Edwards, supra*, 26 Cal.App.5th at pp. 1187-1188.)

The CDCR's regulations, which are found at California Code of Regulations, title 15, sections 3490 through 3493, define a "determinately-sentenced nonviolent offender" as an inmate sentenced to a determinate term and for whom no fact from a list of disqualifying facts is true. (Cal. Code Regs., tit. 15, § 3490, subd. (a).) Among the disqualifying facts is "[t]he inmate is currently serving a term of incarceration for a 'violent felony.'" (*Id.*, subd. (a)(5).) California Code of Regulations, title 15, section 3490, subdivision (c) (Title 15, section 3490(c)) defines violent felony as "a crime or enhancement as defined in subdivision (c) of Section 667.5 of the Penal Code."

4

The regulations then state, "a determinately-sentenced nonviolent offender, as defined in subsections 3490(a) and 3490(b), shall be eligible for parole consideration." (Cal. Code Regs., tit. 15, § 3491, subd. (a).) An inmate who comes within the definition of a determinately-sentenced nonviolent offender nonetheless is ineligible for early parole consideration if any one of three conditions apply. (*Id.*, subd. (b).) The third condition is: "The inmate is convicted of a sexual offense that currently requires or will require registration as a sex offender under the Sex Offender Registration Act, codified in Sections 290 through 290.024 of the Penal Code." (Title 15, § 3491(b)(3).)

Public safety was the CDCR's justification for excluding all sex offenders for early parole consideration. (CDCR, Credit Earning and Parole Consideration Final Statement of Reasons (Apr. 30, 2018), p. 20.) The CDCR observed that some offenses requiring sex offender registration are not considered violent felonies but do involve "some degree of physical force, coercion, or duress with the victim, often a minor." (*Ibid.*) Examples of such offenses are "incest, pimping of a minor under sixteen, sexual battery, and lewd and lascivious acts with a fourteen or fifteen year old victim where the perpetrator is at least ten years older." (*Ibid*.) The CDCR concluded: "[T]hese sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety to require that sex offenders be excluded from nonviolent parole consideration. Accordingly, the proposed regulations exclude inmates who are 'convicted of a sexual offense that requires registration as a sex offender under Penal Code section 290' from the nonviolent parole consideration process." (*Id.* at pp. 20-21.)

### III.

### Penal Code Section 290

Every person convicted of a crime identified in Penal Code section 290, subdivision (c) is required to register as a sex offender with the relevant branch of local law enforcement while that person resides or works in California. (*Id.*, subd. (b).) Most

5

of the crimes listed in Penal Code section 290, subdivision (c) are also listed as violent offenses in section 667.5(c). But several offenses listed in Penal Code section 290, subdivision (c) are not violent offenses under section 667.5(c). Indecent exposure is such an offense. (Compare Pen. Code, § 290, subd. (c) [indecent exposure in violation of Penal Code section 314 listed as offense requiring registration] with § 667.5(c) [indecent exposure in violation of Penal Code section 314 not listed as violent felony].)

## BACKGROUND FACTS AND PROCEDURE

In July 2016, a jury convicted Febbo of three counts of felony indecent exposure in violation of Penal Code section 314, subdivision (1). He was sentenced to a determinate term of six years eight months in prison and is currently serving that term. Febbo previously had been convicted of indecent exposure in 2007 and 2009.[2] Due to his prior and current convictions for indecent exposure, Febbo must register as a sex offender in accordance with Penal Code section 290. (*Id.*, § 290, subd. (c).)

In April 2018, Febbo filed an inmate/parolee appeal to the CDCR by which he sought confirmation he would be given an early parole hearing after serving the first two years of his sentence. The appeal was rejected with instructions for Febbo to direct his appeal to the Board of Parole Hearings (BPH). Febbo's attorney made a written request to the BPH to consider Febbo for an early parole hearing under Proposition 57. The BPH responded with a letter stating, "[I]t appears [Febbo] has been convicted of a sexual offense requiring his registration under Penal Code section 290; therefore, he is

---

[2] The CDCR's opening brief makes the representations that Febbo's prior convictions requiring sex offender registration were for oral copulation of a minor and that he suffered those convictions in 1980 and 1984. The CDCR's record citations do not support those representations, and they are nearly impossible. According to the probation report for the current offense, Febbo was born in May 1974, which would have made him about six years old in 1980 and ten years old in 1984. The only prior registrable offenses identified in the probation report are indecent exposure, for which he was convicted in 2008 and 2009.

not eligible for the nonviolent parole process." In May 2018, Febbo filed an inmate/parolee appeal formally requesting an early parole hearing under Proposition 57. That appeal also was rejected.

Febbo filed a petition for writ of habeas corpus in the trial court. He alleged the CDCR regulations making nonviolent sex offenders ineligible for early parole consideration under Proposition 57 were unlawful and "a clear violation of the California Constitution, as amended by Proposition 57." The trial court issued an order to show cause, the CDCR filed a return, and Febbo filed a traverse.

The trial court granted Febbo's petition for writ of habeas corpus. The court concluded, "[t]he plain language of Article I, § 32 appears to extend eligibility for early parole consideration to *all* nonviolent offenders, including those who are required to register as sex offenders per Penal Code § 290" and "[t]he regulation excluding inmates . . . from early parole consideration is inconsistent with California Constitution, article I, § 32, and is therefore invalid." As relief, the court ordered the CDCR not to exclude nonviolent sex offenders from early parole consideration "based on such status alone" and to evaluate Febbo for early parole consideration within 60 days. The CDCR appealed from the order granting Febbo's petition for writ of habeas corpus.

## DISCUSSION

### I.

### Standards of Review

In resolving the issue raised by this appeal, we must construe portions of section 32(a)(1) and section 32(b) and assess the validity of the regulations implementing those provisions. We independently construe constitutional provisions enacted by voter initiative in a manner that gives effect to the voters' purpose in adopting the law. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933-934.) We begin by analyzing the text of the constitutional provision in its relevant context because

7

that is typically the best and most reliable indicator of the voters' intent.  (*Ibid.*)  We ascribe to words their ordinary meaning, and consider the text of related provisions and the structure of the constitutional scheme.  (*Id.* at p. 933.)  We turn to extrinsic sources, such as ballot pamphlets and other election materials, only if the language of the constitutional provision remains ambiguous after considering its text and structure.  (*Id.* at p. 934; *Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 158.)  In construing initiatives, we presume the voters were aware of existing law.  (*California Cannabis Coalition v. City of Upland, supra*, 3 Cal.5th at p. 934.)

To be valid, a regulation must be (1) consistent with and not in conflict with the enabling statute or constitutional provision and (2) reasonably necessary to effectuate the purpose of the statute or constitutional provision.  (*In re Gadlin* (2019) 31 Cal.App.5th 784, 788 (*Gadlin*), review granted May 15, 2019, S254599.)  Thus, the relevant substantive law circumscribes an agency's rulemaking authority.  (*Ibid.*)

Regulations can be quasi-legislative or interpretive.  (*Association of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 396 (*Jones*).)  Quasi-legislative regulations are those adopted by an agency to which the Legislature has or the voters have delegated a portion of its or their lawmaking power.  (*Ibid.*)  Quasi-legislative regulations "'have the dignity of statutes.'"  (*Id.* at p. 397.)  Judicial review of quasi-legislative regulations is therefore limited to deciding whether the challenged regulation falls within the scope of the delegated power and whether the regulation was reasonably necessary to implement the statute.  (*Ibid.*)

Interpretive regulations are those in which the agency interprets a statute or regulation.  (*Jones, supra*, 2 Cal.5th at p. 297.)  "A court reviewing the validity of an interpretive rule therefore must consider more than simply whether the rule is within the scope of the authority conferred, and whether the rule is reasonably necessary to effectuate the statute's purpose.  Rather, a court must also consider whether the administrative interpretation is a proper construction of the statute."  (*Ibid.*)

8

A regulation can have both quasi-legislative and interpretive characteristics—"'as when an administrative agency exercises a legislatively delegated power to interpret key statutory terms.'" (*Jones, supra*, 2 Cal.5th at p. 397.) The regulations at issue in this case have those mixed characteristics: The voters expressly delegated to the CDCR the power to adopt regulations in furtherance of the early parole consideration provisions of Proposition 57 (§ 32(b)) and in exercising that delegated power, the CDCR interpreted key constitutional terms.

## II.

### Indecent Exposure Is a Nonviolent Felony Offense Under Section 32(a)(1).

A. *The Text of Section 32(a)(1)*

The CDCR contends it had the authority to adopt regulations rendering ineligible for early parole consideration any inmate required to register as a sex offender under Penal Code section 290 by virtue of that inmate's current or past offenses. Febbo is ineligible for early parole consideration, the CDCR argues, because he is required to register as a sex offender due to his current conviction for indecent exposure, and for his prior sex offenses, which also were for indecent exposure. Febbo is eligible for early parole consideration, we conclude, because indecent exposure is a nonviolent felony offense under section 32(a)(1).

Our analysis begins, as the standard of review instructs, with the text of section 32(a)(1), viewed in its context and in light of the structure of the constitutional scheme. The relevant part of section 32(a)(1) states, "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." The structure and meaning of section 32(a)(1) is unambiguous. "Section 32, subdivision (a) of article I of the California Constitution unequivocally states that *any person* convicted of a

9

*nonviolent felony offense* and sentenced to state prison *shall* be eligible for parole consideration after completing the full term for his or her primary offense." (*Alliance for Constitutional Sex Offense Laws v. Department of Corrections & Rehabilitation* (2020) 45 Cal.App.5th 225, 234 (*Alliance*), review granted May 27, 2020, S261362.)

Two recent opinions address the issue whether the CDCR may exclude from eligibility for early parole consideration inmates required to register as sex offenders. In *Alliance*, the Court of Appeal held the CDCR exceeded its rulemaking authority by categorically excluding from eligibility for early parole consideration all inmates serving sentence for current nonviolent sex offenses requiring registration under Penal Code section 290. (*Alliance, supra*, 45 Cal.App.5th at pp. 228, 231-234.) The CDCR had argued the exclusion of sex offenders was valid because they are more likely than other offenders to recidivate and therefore are more dangerous to the public. (*Alliance, supra*, 45 Cal.App.5th at pp. 231-232.)

The issue in *Alliance* was whether the CDCR's stated justification for excluding sex offenders from early parole consideration supported the regulation, and the *Alliance* court was not called upon to address the definition of nonviolent felony offense. The *Alliance* court explained: "At the outset we observe the [CDCR] does *not* argue that all sex offenses requiring registration under Penal Code section 290 are excluded from the term 'nonviolent felony offense' for purposes of [section 32(a)(1)]. In other words, the issue before us is not whether the [CDCR] may define 'nonviolent offender' to exclude inmates convicted of a nonviolent sex offense. Rather, the issue presented here is whether the [CDCR] is authorized to exclude from early parole consideration all sex offenders regardless of their undisputed status as convicted of 'nonviolent offenses' on the basis that they are more likely than other offenders to recidivate and are therefore dangerous to public safety." (*Alliance, supra*, 45 Cal.App.5th at pp. 231-232, fn. omitted.) The court concluded that section 32(a)(1) "unequivocally demonstrates the voters' intent to provide early parole consideration for *all* inmates convicted of a

10

nonviolent felony offense—as opposed to only those inmates the [CDCR] believes are sufficiently unlikely to reoffend." (*Alliance, supra*, at p. 234.) Proposition 57's generally stated goal of enhancing public safety did not grant the CDCR authority to promulgate regulations that contradict the unambiguous language of section 32(a)(1). (*Alliance, supra*, at pp. 234, 238.)

In *Gadlin, supra*, 31 Cal.App.5th at page 789, the Court of Appeal concluded the exclusion of all sex offenders from eligibility for early parole consideration did not apply to inmates with prior convictions for offenses requiring sex offender registration. The court held the plain language of section 32(a)(1) limited the criteria for eligibility for early parole consideration to the offense for which the inmate is presently incarcerated. (*Gadlin, supra*, at p. 789.) The court expressed no opinion on whether application of the CDCR's regulations to exclude inmates, such as Febbo, who are currently serving a sentence for an offense requiring registration as a sex offender violates section 32(a)(1). (*Gadlin, supra*, at p. 790.)

B. *The CDCR Regulations and Scope of Authority to Define Nonviolent Felony Offense*

This case poses an issue unresolved by *Alliance* or *Gadlin*, namely, whether indecent exposure is a nonviolent felony offense under section 32(a)(1). Section 32(a)(1) leaves the term "nonviolent felony offense" undefined and does not refer to any other constitutional or statutory provision to supply a definition. (See *Brown v. Superior Court* (2016) 63 Cal.4th 335, 360 (dis. opn. of Chin, J.) ["the absence of a definition [of nonviolent offense] is troublesome, to say the least"].) The CDCR was delegated authority to adopt regulations (§ 32(b)) to "flesh out the relevant constitutional term— 'nonviolent felony offense.'" (*Gadlin, supra*, 31 Cal.App.5th at p. 794 (conc. opn. of Baker, J.).)

The CDCR's authority to define nonviolent felony offense is not unbounded: To be valid, a regulation must be consistent with and correctly interpret the

enabling provision of the constitution. (*Jones, supra*, 2 Cal.5th at p. 396.) The CDCR's authority to promulgate regulations is thus limited by the text of section 32(a)(1), which, according to its plain meaning, grants eligibility to any inmate convicted of a nonviolent felony offense. The California Constitution does not permit the CDCR to adopt regulations making inmates ineligible for early parole consideration based solely on a conviction for a nonviolent felony offense. (See *Alliance, supra,* 45 Cal.App.5th at p. 234.)

The plain meaning of the term nonviolent felony offense is an offense that is a felony and is not violent in nature. The CDCR regulations do not provide a general definition for the word violent but instead define nonviolent felony offense by reference to the offenses identified in section 667.5(c) and Penal Code section 290. Thus, Title 15, section 3490(c) defines the term "nonviolent felony offense" under section 32(a)(1) by defining "'[v]iolent felony'" as a crime or enhancement defined in section 667.5(c). Section 667.5(c) does not provide a general definition of violent, but identifies the specific offenses deemed to be violent felonies.[3] Title 15, section 3491(b)(3) excludes from early parole consideration an inmate convicted of an offense requiring registration as a sex offender under Penal Code section 290.

What is the net effect when Title 15, section 3490(c) is read in conjunction with Title 15, section 3491(b)(3)? The effect is that the term nonviolent felony offense under section 32(a)(1) means any crime or enhancement that is not identified in section 667.5(c) or for which registration as a sex offender is not required under Penal Code sections 290 through 290.024. Whether an inmate was convicted of a violent felony under Title 15, section 3490(c) or an offense requiring sex offender registration under Title 15, section 3291(b)(3), the result under the regulations is the same: the inmate is ineligible for early parole consideration. These regulations are, therefore, an exercise of

---

[3] In contrast, section 16 of title 18 of the United States Code provides a general definition of the term "crime of violence" for use in federal criminal law.

the CDCR's interpretive authority, subject to scrutiny for whether they correctly interpret the meaning of the term nonviolent felony offense under section 32(a)(1).  (*Jones, supra*, 2 Cal.5th at p. 397.)

The CDCR was "not constitutionally compelled" to limit violent felonies to those crimes and enhancements identified in section 667.5(c) (*Gadlin, supra*, 31 Cal.App.5th at p. 794 (conc. opn. of Baker, J.)), and the text of section 32(a)(1) does not use, much less mandate, such a definition.  By its terms, section 667.5(c) is not an all-purpose list of violent felonies for use in every aspect of California law.  Instead, section 667.5(c) expressly states it is identifying violent felonies only "[f]or the purpose of this section," and the purpose of section 667.5 is only to impose a sentence enhancement for the specified offenses.  There are many decidedly violent felonies, such as rape of a drugged person (Pen. Code, § 289, subd. (e)), sex trafficking (Pen. Code, § 236.1), and hostage taking (Pen. Code, § 210.5), that are not among the violent felonies listed in section 667.5(c).

The CDCR's authority to define the scope of eligibility for early parole consideration is subject to a strict limitation imposed by section 32(a)(1) which is, as we have explained, the CDCR cannot adopt regulations denying eligibility for early parole consideration to an inmate serving time for a nonviolent felony offense.  The CDCR cannot by regulatory fiat turn an intrinsically nonviolent felony offense into a violent one.

C.  *Definitions of Nonviolent Felony Offense and Violent Felony*

The terms nonviolent felony offense and violent felony, though undefined by section 32(a)(1), have been defined in various sources and have commonly understood meanings.  A survey of the crimes identified in section 667.5(c) as violent felonies shows they all, with maybe one exception, involve killing, physical force, infliction of physical injury, coercion, rape, sexual assault or abuse, destruction of property, fear, duress, or

13

threats.[4]  Federal law defines the term "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or [¶] (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  (18 U.S.C., § 16.)  Violence has been defined in case law as denoting "'the unjust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage, or fury'" (*People v. McIlvain* (1942) 55 Cal.App.2d 322, 328-329), and violent has been defined as "characterized by extreme force . . . marked by abnormally sudden physical activity and intensity" (Webster's 3d New Internat. Dict. (2002) p. 2554, col. 2).

These definitions share common elements:  Violence or a violent crime involves physical force, sexual contact, physical injury or destruction of property, fear, coercion, or duress.  The CDCR, in its final statement of reasons supporting the regulations, described violent felonies in a similar way.  The CDCR stated that some offenses requiring sex offender registration, though not considered violent felonies, are nonetheless violent because they involve "some degree of physical force, coercion, or duress with the victim, often a minor."  (CDCR, Credit Earning and Parole Consideration Final Statement of Reasons, *supra*, p. 20.)  Sex offenders should be excluded from eligibility for early parole consideration because, the CDCR concluded, "these sex offenses demonstrate a sufficient degree of violence and represent an unreasonable risk to public safety."  (*Id*. at pp. 20-21.)

Indecent exposure is not a violent crime under any of the given definitions. Under Penal Code section 314, a person commits indecent exposure if that person: "1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or [¶]

---

[4]  An exception might be first degree burglary.  (Pen. Code, § 667.5, subd. (c)(21).)

14

2.  Procures, counsels, or assists any person so to expose himself or . . . to make any other exhibition of himself to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts."

None of the conduct punishable under Penal Code section 314 involves physical contact, use of physical force against persons or property, infliction of physical injury or property damage, use of fear, duress, sexual contact, coercion, or threats. Indecent exposure does not meet the CDCR's own standard for violent offense.  (CDCR, Credit Earning and Parole Consideration Final Statement of Reasons, *supra*, p. 20.)  The CDCR does not attempt to show how indecent exposure is violent.

The concurring justice in *Gadlin*, while concluding the CDCR had the authority to exclude sex offenders generally from eligibility for early parole consideration, suggested indecent exposure might not be a nonviolent felony offense under section 32(a)(1).  At the very end of the concurring opinion in *Gadlin,* the concurring justice wrote:  "Although I have said more than the majority does, there are still questions I too leave for another day, among them the question of whether an inmate incarcerated for indecent exposure could successfully challenge the sex offender regulatory exclusion as unconstitutional under Proposition 57 as applied to him or her." (*Gadlin, supra*, 31 Cal.App.5th at p. 796, fn. 4 (conc. opn. of Baker, J.).)  This opinion answers that question by concluding the inmate's challenge should be successful.

The CDCR argues that section 32(b), by requiring the CDCR to certify that its regulations "protect and enhance public safety," gave it the authority to exclude all sex offenders from early parole consideration.  The CDCR argues that public safety is the policy driving section 32(a)(1) and it could not certify as promoting public safety a regulation making sex offenders eligible for early parole release.  The CDCR's duty to certify its regulations promote and enhance the policies supporting section 32(a) did not grant the CDCR authority to promulgate and adopt policies that are inconsistent or conflict with section 32(a)(1).  (*Alliance, supra*, 45 Cal.App.5th at pp. 235.)

15

D. *Conclusion*

The term nonviolent felony offense in section 32(a)(1) is unambiguous and includes the crime of indecent exposure under Penal Code section 314. The CDCR regulations are invalid to the extent they deny early parole eligibility solely on the ground the inmate committed that offense. Section 32(a)(1) only makes an inmate eligible for early parole consideration and does not mean the inmate will be paroled. That decision rests with the BPH, which may consider an inmate's full criminal history, including prior sex offenses, in deciding whether to grant parole. (See Pen. Code, § 3040 et seq.; Cal. Code Regs., tit. 15, § 2449.32, subd. (c).)

## III.

### Extrinsic Materials Support Our Conclusions

Because we have concluded section 32(a)(1) is unambiguous on its face with respect whether indecent exposure is a nonviolent felony offense, it is unnecessary for us to consider extrinsic materials to discern the voters' intent. Considering such materials is useful, however, to test the soundness of our conclusions. (See *Hi-Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 560 ["we may 'test our construction against those extrinsic aids that bear on the enactors' intent' [citation], in particular the ballot materials"].) We consider extrinsic materials, including the ballot summary, arguments for and against the initiative, and the Legislative Analyst's analysis, to determine voter intent. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 445.)

The Official Title and Summary section of the Voter Information Guide for the November 2016 general election states that Proposition 57 would, among other things, "[a]llow[] parole consideration for persons convicted of nonviolent felonies, upon completion of prison term for their primary offense as defined." (Voter Information Guide, Gen. Elec., *supra*, official title and summary of Prop. 57, p. 54.) The Legislative

16

Analyst's analysis states Proposition 57 would change the state constitution to make inmates convicted of nonviolent felony offenses eligible for early parole consideration. (*Id.*, analysis of Prop. 57 by Legis. Analyst, p. 56.) As to what are nonviolent felony offenses, the analysis states: "The measure requires CDCR to adopt regulations to implement these changes. Although the measure and current law do not specify which felony crimes are defined as nonviolent, this analysis assumes a nonviolent felony offense would include any felony offense that is not specifically defined in statute as violent." (*Ibid.*)

The Official Title and Summary and the Legislative Analyst's analysis state that eligibility for early parole consideration is based on whether the inmate currently is serving a sentence for a nonviolent felony, with no other exceptions or qualifications as to the nature of the offense. The Legislative Analyst assumes nonviolent felonies are those offenses not defined "in statute" as violent.

The arguments for and against Proposition 57 offered differing views of its potential effects on public safety. In the rebuttal to the proponents' argument in favor of Proposition 57, and in the argument against Proposition 57, opponents argued Proposition 57 would grant early parole to inmates convicted of various violent offenses, including rape of an unconscious victim, human sex trafficking, and lewd acts against a 14-year-old. (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 57, p. 58, argument against Prop. 57, p. 59.) The opponents of Proposition 57 similarly argued in the argument against Proposition 57 that it would deem various violent crimes to be nonviolent and make perpetrators of those crimes eligible for early parole. (*Id.*, argument against Prop. 57, p. 59.) Indecent exposure was not on the list of violent offenses which, the opponents argued, would be deemed nonviolent under Proposition 57.

In rebuttal, the proponents of Proposition 57 emphasized that it granted early parole eligibility only to inmates convicted of nonviolent felonies. The proponents

17

asserted "violent criminals as defined in Penal Code [section] 667.5(c) are excluded from parole" and Proposition 57 "[d]oes NOT and will not change the federal court order that excludes sex offenders, as defined in Penal Code [section] 290 from parole." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 57, p. 59.) It appears the order referred to by the proponents is an order issued in November 2014 by a three-judge court of the United States District Court for the Eastern and Northern Districts of California requiring the State of California to create and implement a parole determination process by which nonviolent second-strike offenders would be eligible for parole consideration. (*Coleman et al. v. Brown et al.* (E.D.Cal. & N.D.Cal. Nov. 14, 2014, Civ. No. 2:90-cv-0520.) In response to that order, the State of California submitted a report on a proposed parole process. The proposal excluded from parole eligibility inmates required to register as sex offenders pursuant to Penal Code section 290 "based on a current or prior sex-offense conviction." This report was not included or cited in the Voter Information Guide.

According to the CDCR, these passages from the ballot pamphlet tell us "[t]he intended result of Proposition 57 is parole reform for nonviolent inmates who are not sex offenders." According to Febbo, they tell us "the bulk of the ballot materials made very clear that some sex offenders would be eligible for early parole."

What we glean from the Voter Information Guide is the voters intended to grant early parole consideration to an inmate currently serving a sentence for a nonviolent offense, with no express definition of nonviolent provided. That is what the Official Title and Summary, the Legislative Analyst's analysis, and the text of Proposition 57, told the voters. We presume the voters duly considered the text of Proposition 57 (*Amador Valley Joint Union High School Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243-244), voted intelligently (*Brosnahan v. Brown* (1982) 32 Cal.3d 236, 252), and intended the meaning apparent on the proposition's face (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301).

In attempting to discern voter intent from the ballot materials, we find noteworthy the absence in the ballot arguments of any mention of indecent exposure. The opponents of Proposition 57 listed a number of felonies, including sex offenses, which they claimed were violent but would not be deemed violent felony offenses under Proposition 57. The opponents did not argue indecent exposure was a violent felony, perhaps because they did not believe indecent exposure was violent, did not realize indecent exposure was an offense requiring sex offender registration, or did not think about indecent exposure at all in preparing their arguments. Under any scenario, nothing in the ballot pamphlet explicitly told the voters indecent exposure would be a violent felony offense under Proposition 57. The extrinsic materials thus confirm the soundness of our conclusion the term nonviolent felony offense in section 32(a)(1) does include indecent exposure in violation of Penal Code section 314.

## DISPOSITION

The order granting the petition for writ of habeas corpus is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.


19